# CASES

ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

THE PEOPLE ex rel. James W. Gullett et al. Petitioners, vs.
JAMES S. McCULLOUGH, Auditor of Public Accounts,
Respondent.

*Opinion filed February 23, 1912—Rehearing denied April 4, 1912.*

1. CONSTITUTIONAL LAW—*presumptions are in favor of validity
of an act.* Every presumption is to be indulged in favor of the
validity of an act, as no act is to be regarded as beyond the power
of the legislature unless there is no reasonable doubt that it is so.

2. SAME—*the courts are not authorized to pass upon the wis-
dom of a law.* Courts are authorized, when the validity of an act
is attacked, to determine whether such act was within the power of
the legislature, but they have no authority to pass upon the question
of the wisdom of the law.

3. SAME—*the legislature may pass any act not prohibited by the
constitution.* The legislature may pass any law and do any legis-
lative act not prohibited by the constitution of the State or of the
United States.

4. SAME—*power to appoint to office is not inherent in execu-
tive department.* The power to appoint to office is not inherent in
the executive department of the State unless conferred by the con-
stitution or the statutes, but the creation of offices, the delegation
and regulation of the powers and duties of officers and the prescrib-
ing of the manner of their appointment or election are legislative
functions, which are restrained only by the constitution.

5. SAME—*the State Civil Service law of 1911 does not violate article 3 of the constitution.* The State Civil Service law of 1911 is not, as applied to the office of Secretary of State, in violation of article 3 of the constitution, which divides the government into executive, judicial and legislative departments and prohibits one department from exercising the powers of another, since appointments, whether made by the Secretary of State or the civil service commission, are made by the executive department.

6. SAME—*effect of first clause of section 1 of article 5 of the constitution.* The first clause of section 1 of article 5 of the constitution, which provides that the executive department shall consist of certain enumerated officers, does not declare what shall be the powers or the duties of any of the officers named, or that they shall be so entirely separate and distinct as to have no connection with or dependence on one another.

7. SAME—*effect of clause requiring officers to perform duties imposed by law.* The provision of section 1 of article 5 of the constitution requiring the State officers to perform such duties as may be imposed by law, commits to the legislature, except as specific directions or prohibitions are found elsewhere in the instrument or implied from the name of the office, the question of the powers and duties of all the officers of the executive department, their relations with one another and the manner and means by which they shall enforce the laws.

8. SAME—*fact that officers are created by the constitution does not give them unrestricted power.* The fact that officers of the executive department of the State are created by the constitution does not confer unrestricted power upon them, and, except as to such rights and powers as they derive from the various provisions of the constitution, they are subject to the will of the legislature.

9. SAME—*legislature may impose upon executive officers such duties as it sees fit.* The legislature may impose upon the executive officers of the State such duties as it sees fit, not inconsistent with their duties imposed by the constitution, and it may change such duties from time to time, transfer them from one officer to another, or require two or more of the officers to co-operate in the same work to such extent as it may deem best.

10. SAME—*Secretary of State is not independent of legislature even in performance of his constitutional duties.* In so far as the constitution confers any powers upon the Secretary of State and imposes any duties upon him the legislature cannot confer such powers or impose such duties upon another officer, but in the performance even of such duties he is not entirely independent of the legislature.

11. SAME—*duties of Secretary of State are principally of clerical nature.* The duties of Secretary of State are principally clerical duties imposed by statute, and his constitutional duties constitute but a small part of those he is required to perform, and the fact that the constitution requires him to perform such duties as may be prescribed by law does not make such duties as are prescribed by statute constitutional duties.

12. SAME—*State Civil Service act of 1911 not invalid as applied to Secretary of State.* The State Civil Service act of 1911 is not, as applied to the positions of assistant chief clerk, chief corporation clerk and the book-keeper in the office of the Secretary. of State, an unlawful interference by the legislative department with the constitutional powers and duties of such officer, nor a violation of that provision of the constitution requiring him to perform such duties as may be prescribed by law.

CARTWRIGHT, J., specially concurring.

VICKERS, FARMER and COOKE, JJ., dissenting.

ORIGINAL petition for *mandamus.*

GEORGE B. GILLESPIE, (GILLESPIE & FITZGERALD, of counsel,) for petitioners.

WILLIAM H. STEAD, Attorney General, and JOEL C. FITCH, (EDGAR A. BANCROFT, of counsel,) for respondent.

Mr. JUSTICE DUNN delivered the opinion of the court:

This cause has been submitted for decision on demurrer to an amended petition for a writ of *mandamus* filed originally in this court, upon leave granted, for the purpose of testing the validity of the amendment to the State Civil Service law, approved on June 10, 1911, (Laws of 1911, p. 222,) as applied to certain employees. The three petitioners are, respectively, the assistant chief clerk, the chief corporation clerk and the book-keeper in the office of the Secretary of State, and the prayer of the petition is that the Auditor of Public Accounts be directed to issue to the petitioners, warrants on the State Treasurer for the re-

spective amounts due to them upon pay-rolls, certified by the Secretary of State, for the months of July and August, 1911, without the certificate of the State civil service commission required by section 31 of the Civil Service law.

The petition sets forth the various duties imposed by law upon the Secretary of State, and avers that these duties are in the main ministerial, and are so numerous that it is impossible for the Secretary of State personally to perform them all, and that they are necessarily delegated to a large number of assistants of various kinds, who perform them under the direction of the Secretary of State. These duties naturally fall into departments, over each of which has been placed a chief assistant. The duties of the relator James W. Gullett, as assistant chief clerk, are, under the direction of the chief clerk, who is the chief assistant or deputy of the Secretary of State, to assist in supervising the work of the office and in the absence of the chief clerk to perform his duties; to pass upon the legality of petitions of foreign corporations for license to do business in this State and perform or direct all work in respect to such licenses; to direct or assist in the performance of any other work assigned him. In the absence of the chief clerk he has general supervision of all the work of the office, with discretionary power on all questions, handles all fees received, directs their entry in the proper accounts, reports them to the Secretary of State, and decides and disposes of all matters relating to the legality of foreign and domestic corporations referred to him. Acting either as chief clerk or assistant chief clerk, he has authority to give and enforce, and does give, directions to subordinates in the various departments, being subject at all times to the directions and control of the Secretary of State. The relator Hezekiah B. Williams is the head of the corporation department, and his duties are, under the supervision of the chief clerk, to handle, decide and dispose of all matters regarding the formation of domestic corporations or

changes therein; to see that all papers filed in connection with such formation and changes are according to law; to supervise and direct the work of those clerks under him, and to check the fees payable in connection with the organization or increase of capital stock of domestic corporations. The relator James C. Peek is the book-keeper, whose duty it is to check the expense accounts and pay-rolls and keep full and complete records and books of account of all moneys received and disbursed by the Secretary of State.

The relators have been performing their respective duties since the election of the Secretary of State, in 1908. The General Assembly, by an act approved June 10, 1911, to provide for the expenses of the State government until' the expiration of the first fiscal quarter after the adjournment of the next regular session of the General Assembly, appropriated to the Secretary of State for clerk hire, among other sums, $3000 per annum for an assistant chief clerk, $2400 per annum for a chief corporation clerk and $2000 per annum for a book-keeper, and authorized and directed the Auditor of Public Accounts to draw warrants on the State Treasurer for such sums on monthly pay-rolls, duly certified to by the head of the department. On July 31, 1911, the Secretary of State duly certified to a pay-roll, as required by the Appropriation act, showing that the relators were entitled to receive for services rendered during the month of July, 1911, James W. Gullett $250, H. B. Williams $200 and J. C. Peek $166.66. A similar pay-roll was certified on August 31, 1911, for the month of August. The services certified in these pay-rolls were actually performed by the relators. The pay-rolls were presented to the Auditor on their respective dates, and he was then, and afterward, requested to issue warrants to the relators but refused, claiming that he was not authorized to do so upon the certified pay-roll of the Secretary of State without the further certificate of the State civil service commission required by section 31 of the Civil Service act.

The relators insist that the certificate of the civil service commission is unnecessary, for the reason that the Civil Service act, as applied to officers whose offices are created by the constitution, is null and void because it violates the following provisions of the constitution: First, that which declares that the powers of the government of this State are divided into three distinct departments,—the legislative, executive and judicial; second, that which declares that the executive department shall consist of a Governor, Lieutenant Governor, Secretary of State, Auditor of Public Accounts, Treasurer, Superintendent of Public Instruction and Attorney General; third, that which directs that the executive officers, except the Lieutenant Governor, shall perform such duties as may be prescribed by law.

The State Civil Service act follows closely, section for section, the City Civil Service act and is substantially a copy of it, only such changes being made as are rendered necessary to adapt it to the State service instead of municipal service. The City Civil Service act was passed in 1895 and has been in force in the city of Chicago since November of that year. Controversies as to its constitutionality soon arose, and cases involving that question were brought to this court and decided upholding the constitutionality of the act and of the principle for the appointment of employees in the public service upon which it is founded. (*People* v. *Kipley,* 171 Ill. 44; *People* v. *Loeffler,* 175 id. 585.) A good deal of space in the arguments of counsel is devoted to a consideration of the wisdom and respective merits of the two systems of appointment, which have long been known as the "spoils system" and the "merit system." With this discussion we have here no concern. However important to the State and its citizens the method adopted for appointments to the public service may be, no one contends that the courts have any authority to pass upon the wisdom of that method. The question presented here is the constitutional power of the legislature to adopt the

method it has adopted, and not the wisdom of its action. Every presumption is to be indulged in favor of the validity of the act, for no act is to be regarded as beyond the power of the legislature unless there is no reasonable doubt that it is so. *People* v. *Nelson,* 133 Ill. 565; *People* v. *Hazelwood,* 116 id. 319; *Hawthorn* v. *People,* 109 id. 302.

The State Civil Service act, first passed in 1905, applied only to offices and places of employment in the charitable institutions of the State, and, with subsequent amendments, has since been in force. The amendment of 1911 extended its operation to all offices and places of employment in the State, with certain exceptions mentioned in section 11 not now necessary to refer to. The essential features of the act, so far as the questions now raised are concerned, are, that it authorizes the appointment by the Governor, with the consent of the senate, of a commission of three members, no more than two of whom shall be members of the same political party, whose duty it shall be to classify and grade all offices and places of employment in the State service, with specified exceptions; that the commission shall provide for the examination of all applicants for appointment to the offices and places so classified, and shall prepare a register of such applicants as shall have satisfactorily passed the examinations according to the rules of the commission; that when an appointment is to be made the commission shall certify to the head of the department in which the appointment is to be made, the name of the person standing highest on the register, and the head of the department shall appoint the person so certified.

The first constitutional provision which the act is supposed to violate is article 3, which declares that the powers of government are divided into three distinct departments,—the legislative, executive and judicial,—and prohibits any person or collection of persons, being one of these departments, from exercising any power belonging to either of the others, except as thereinafter expressly di-

rected or permitted. This article does not appear to be in any way involved. It is the undoubted law that the legislature may pass any law and do any legislative act not prohibited by the constitution of the State or the United States. (*People* v. *Hill,* 163 Ill. 186; *Wilson* v. *Board of Trustees,* 133 id. 443; *Munn* v. *People,* 69 id. 80.) It is equally true that the power to appoint to office is not inherent in the executive department unless conferred by the constitution or the legislature, but that the creation of officers, the delegation and regulation of the powers and duties of officers and the prescribing of the manner of their appointment or election are legislative functions, which are restrained only by the constitution. (*Field* v. *People,* 2 Scam. 79; *People* v. *Morgan,* 90 Ill. 558; *People* v. *Nelson, supra; Plummer* v. *Yost,* 144 Ill. 68; *People* v. *Evans,* 247 id. 547; *People* v. *Loeffler, supra; Hovey* v. *State,* 119 Ind. 403.) Whether appointments might be made by the Secretary of State or the commission, they would still be made by the executive department, and there would be no exercise of the powers of one department by another. If the constitution confers upon the Secretary of State, by some other provision, the exclusive power of appointment, the act would violate such other provision if it undertook to take such exclusive power from him and confer it on another, but it would not violate article 3.

The second constitutional provision which is supposed to be violated is the first clause of section 1 of article 5, which provides that the executive department shall consist of a Governor, Lieutenant Governor, Secretary of State, Auditor of Public Accounts, Treasurer, Superintendent of Public Instruction and Attorney General. This clause of the constitution is a declaration of a fundamental rule in accordance with which the government is to be administered, but it does not purport to give a full and complete enumeration of the various agencies through which the law is to be enforced. Neither does it declare what shall be

the powers or the duties of any of the officers named, or that they shall be so entirely separate and distinct as to have no connection with or dependence on one another. The officers are required, in the next sentence, to perform such duties as may be required by law, and thus, except as specific directions or prohibitions are found elsewhere in the instrument, the constitution commits to the legislature the entire question of the powers and duties of all the officers of the executive department, their relations with one another and the manner and the means by which they shall enforce the laws. The fact that such officers are created by the constitution does not confer unrestricted power upon them, and, except as to such rights and powers as they derive from the various provisions of the constitution, they are entirely subject to the will of the legislature.

The constitutions of 1818 and 1848 contained the provision that the executive power of the State shall be vested in a Governor, and the Federal constitution provides that the executive power shall be vested in a President of the United States, but it was never held that these provisions conferred upon the Governor in the one case, or the President in the other, the right to proceed in the enforcement of the law, which is the special function of the executive, according to his own will and pleasure, unrestrained and uninfluenced by the action of the legislative department. Each is the head of one department of the government,— the executive,—charged with the duty of taking care that the laws be faithfully executed, but each, in the discharge of his duties, is subject to the control of those laws. The legislature may impose upon any or all of the executive officers such duties as it sees fit, not inconsistent with their duties imposed by the constitution; may change such duties from time to time; may transfer them from one officer to another, and may require two or more of such officers to co-operate in the same work to such extent as it may deem best. On this subject it was said by the Supreme

Court of the United States, in *Kendall* v. *United States,*
12 Pet. 524: "The theory of the constitution undoubtedly
is that the great powers of the government are divided into
separate departments, and so far as these powers are de-
rived from the constitution the departments may be re-
garded as independent of each other, but beyond that all
are subject to regulations by law touching the discharge of
the duties required to be performed. The executive power
is vested in a President, and, as far as his powers are de-
rived from the constitution, he is beyond the reach of any
other department, except in the mode prescribed in the con-
stitution, through the impeaching power. But it by no
means follows that any officer in every branch of that de-
partment is under the exclusive direction of the President.
Such a principle, we apprehend, is not, and certainly can
not be, claimed by the President. There are certain politi-
cal duties imposed upon many officers in the executive de-
partment the discharge of which is under the direction of
the President, but it would be an alarming doctrine that
Congress cannot impose upon · any executive officer any
duty they may think proper which is not repugnant to any
rights secured and protected by the constitution, and in
such cases the duty and responsibility grow out of and are
subject to the control of the law, and not to the direction
of the President. And this is emphatically the case where
the duty enjoined is of a mere ministerial character."

It is finally argued that the act violates the provision
contained in section 1 of article 5 of the constitution, that
the Secretary of State, together with other executive State
officers, shall perform such duties as may be prescribed by
law. The only duties specifically imposed upon the Secre-
tary of State by the constitution are found in section 9 of
article 4, which directs him to call the house of represen-
tatives to order at the opening of each new assembly and
preside over it until a temporary presiding officer shall have
been chosen and shall have taken his seat, and in article 5,

by section 1 of which he is required to reside at the seat of government and keep the public records, books and papers there; by section 4, impliedly, to receive and transmit to the speaker of the house of representatives the returns of elections for the officers mentioned in section 3; by section 16, impliedly, to receive and file bills passed by the General Assembly but not signed by the Governor and not returned to the General Assembly before its adjournment; by section 20, to keep an account of all moneys received or disbursed by him from all sources and make a semi-annual report thereof to the Governor, under oath; by section 21, to make a report to the Governor at least ten days before each regular session of the General Assembly, and to furnish to the Governor, at any time he may require it, information in writing, under oath, upon any subject relating to the condition, management and expenses of his office; by section 22, to keep and use officially, as directed by law, the great seal of the State. The legislature cannot absolve the Secretary of State from the performance of these duties or impose them upon another. So far as the constitution confers any power upon him, he is beyond the reach of the legislature. It cannot deprive him of the custody of the great seal of State or authorize another officer to affix it to any document, and it cannot require the public records, books and documents to be kept elsewhere than at the capital. But the Secretary of State is not independent of the legislature in the performance even of these duties. He is subject to its control in all things connected with them, where the constitution has not imposed a limitation upon the power of the legislature. What are the public records, books and papers which are to be kept at the seat of government must be ascertained by an examination of the statutes. They are only such records, books and papers as some statute names. While they must be kept at the seat of government, the legislature may require them to be kept in the State house, in offices pro-

vided for that purpose. While no other officer can be authorized to use the great seal, the Secretary of State can use it only as directed by law. The legislature may regulate the form in which the records and accounts shall be kept and reports shall be made, and, in general, control whatever the constitution has not prescribed. So the independence of the legislature on the part of the Secretary of State, even in regard to his closely circumscribed constitutional duties, is confined within narrow limits. Each of the several executive officers mentioned in the constitution, while the head of one division of the executive department, is not a co-ordinate officer with the Governor. The supreme executive power is lodged, by section 6 of article 5, in the Governor, who is the head of the executive department under the present constitution no less than under preceding constitutions. The other executive officers named are entirely subject to the control of the legislature in the conduct of their offices, except where the constitution, expressly or by implication, imposes certain duties or confers certain powers, or where the name of the office itself implies the possession of certain powers. The Attorney General is vested with many powers and duties, and these appertain to his office under the constitution. He cannot be deprived of these common law functions by the legislature, but new duties may be imposed. The officers accept their offices subject to such burdens as the legislature may impose. Their duties may be increased, the number of their assistants may be diminished, their work may be made more burdensome and the facilities for doing it lessened. The law imposes no penalty for refusing to accept the offices, but they must be accepted with their burdens.

The duties of the Secretary of State are for the most part ministerial, and it is so averred in the petition. In fact, his is a clerical office and its duties are chiefly of a clerical nature, consisting of the filing and keeping of such papers and records as the legislature may direct him to file

and keep, the issuance of such licenses as the legislature authorizes him to issue, the custody and care, purchase and distribution of such public property or supplies as the legislature may direct. He has but the most limited authority except as he receives it from the legislature, and occupies no such position with relation to the State government as is occupied by the Secretary of State of the United States with relation to that government.

The petitioners are not officers of the State. No law has ever been passed creating the office either of assistant chief clerk, chief corporation clerk or book-keeper in the office of the Secretary of State. The only recognition such positions have ever received is, that from session to session appropriations of varying amounts have regularly been made for the payment of the holders of them. This amounts to no more than authority to the Secretary of State for their employment. The duties performed are a part of those imposed upon the Secretary of State, not by the constitution but by statutes. The constitutional duties of the Secretary of State form so small a part of those he is required to perform as to be almost negligible in quantity compared with his statutory duties. They have not varied substantially since the adoption of the first constitution, which required him to keep a fair register of the official acts of the Governor, and, when required, to lay the same, and all papers, minutes and vouchers relative thereto, before either branch of the General Assembly, and to perform such other duties as should be assigned him by law. The language of the constitution of 1848 was the same. The first legislature under the constitution, by an act approved March 1, 1819, assigned to the Secretary the duty of keeping the acts, laws and resolutions of the General Assembly and other papers and records. (Laws of 1819, p. 87.) From that time to this the legislature, by numerous acts passed from time to time, has assigned duties to the Secretary of State, but with such duties as the legisla-

ture, in the course of fifty years, had added to his constitutional duties, the Secretary of State in 1869 needed only one assistant, though he employed six janitors and two night watchmen. (Debates of Const. Conv. 1076.) In the forty years and more since that time the volume of business in the office of the Secretary of State has had a very great increase, both by reason of the unexampled growth of the State in population, wealth and business and of the addition of other statutory duties. Some of the duties prescribed by law may be found set forth in Hurd's Statutes of 1909, chapters 124, 127, 128, 147, 114, 32.

The position of counsel for the relators is, that the constitution directs that the Secretary of State shall perform such duties as may be prescribed by law; that when any duty is prescribed by law it thereupon becomes a duty which the Secretary of State is required by the constitution to perform; that being required to perform it, he may do it by a deputy or agent; that if he performs it by a deputy or agent the act so done by his agent he does himself and thus the constitution is complied with, but that if he is compelled to accept a deputy or agent whom the law authorizes some other person to select, then the act of performance is not his act, but the duty prescribed by law to be performed by the Secretary of State he has been prevented from performing, and, contrary to the constitution, the law has required its performance by another person. The argument goes, and must go, to the extent that the law can exercise no control whatever over any appointment under the constitutional executive officers, however unimportant. If the Secretary of State is authorized to provide a janitor for a building, the selection must be the personal act of the officer, which he cannot delegate, nor can his choice be restricted in any way. If he has dozens or scores of assistants to employ, his choice is absolute and uncontrolled. The only control the legislature can exercise is through the amount of money it may appropriate. It is

also argued that by various statutes under the constitutions of 1818 and 1848, certain duties, the character of which were well known and understood, became a part of the official functions of the Secretary of State; that the power of the Secretary of State to appoint deputies and assistants at his own will and pleasure had been exercised and acquiesced in without objection; that these duties and this power belonged to the office of the Secretary of State at the time of the adoption of the constitution of 1870, and were therefore adopted by that constitution and became a part of the organic law of the State. It cannot, however, be maintained that the statutory duties performed by the executive officers when the constitution was adopted became at that time unchangeable. Section 1 of the schedule recognized the continuance of all the statutes imposing duties on the executive officers, and the constitution contains no evidence of an intention that they should be irrepealable. Such statutes continued to be operative as statutes under the new constitution until changed by the legislature, but the power of the legislature to amend or repeal them was not affected.

The declaration that the officers of the executive department shall perform such duties as may be required by law was not intended to be a restriction on the legislature. On the contrary, it removed any restriction upon the power of the legislature to require of such officers the performance of any duties, that might be implied from the imposition of specific duties and left the whole question open to the legislature. The legislature could determine what duties each officer should perform in addition to those specifically mentioned in the constitution, and when, where, how and by what instruments he should perform those duties. The officer, in relation to the State, is neither a contractor nor an employee. In relation to the clerks and employees in his office he is not a contractor or employer or a master. The officer does not occupy the relation of

an independent contractor, and arguments founded upon the doctrines of contract, master and servant and *respondeat superior* have no application and little analogy. The duties which the officer is required to perform concern the State. He must perform them, not because he has contracted to, but because the law has imposed them on his office. The employees who assist him are not his employees but employees of the State. The work they are engaged in is the work of the State. They are in the public service,— not private service. The State, and not the officer, employs and pays them, and he is not liable for their negligence. (*Barker* v. *Chicago, Peoria and St. Louis Railway Co.* 243 Ill. 482; *Bowden* v. *Derby*, 97 Me. 536; *McKenna* v. *Kimball*, 145 Mass. 555.) There is no foundation for saying that an executive officer does not perform a duty required of him by law because he performs it through an instrumentality selected by some other authority in the manner authorized by law. When the custodian of a building, whose janitors are appointed and placed under his control by some other authority, is required to keep the halls and rooms clean, and they are kept clean by the janitors under the direction of the custodian, it is a straining of language to say that this duty is performed, not by the custodian who directs the janitors, but by the authority which appointed them. The fact that for many years the legislature appropriated sums of money in gross for the payment of clerk hire, laborers, janitors, policemen and watchmen, without any specification as to their number, time of service or rate of wages, and permitted the Secretary of State to employ such assistants at his discretion, as was the case until 1895, has no tendency to indicate that this officer had any constitutional right to do so. While he was not required to perform his duties in person, he was required to perform them all for the compensation fixed by law, unless the legislature saw fit to pay clerks or other assistants for him. There

was no restriction upon the legislature in regard to such assistants. It could impose such regulations and conditions in regard to them, their number, duties, manner of appointment and other circumstances of their employment, as it saw fit. Until 1895 there was no regulation as to the greater number of such assistants. A gross sum was appropriated for their payment. Since that time appropriations have been made, for the most part, of fixed annual amounts for each of a specified number of clerks and other employees, the character of whose employment has in each case been definitely stated, but the personal discretion of the various executive officers as to the individuals who should be employed has been left undisturbed until 1911. The act under consideration provides a method of determining who these individuals shall be. It takes away the uncontrolled discretion of the officers, and, with the object of increasing the efficiency of the public service, provides another method for the selection of persons in that service. The method adopted, both for appointments and promotions, is through free, public, competitive and practical examinations, having reference only to the relative capacity of the persons examined to discharge the duties of the positions they seek. The act provides for the classification of all offices and places of employment in the public service except those mentioned in section 11, the standardizing of employment in each grade, and the keeping of a record of the relative efficiency of each officer and employee in the classified service. It is based on the principle that positions in the public service are not the personal or political perquisites of any officer or party, and ought not be divided, after a political campaign, as so much loot of actual warfare, but that competency, merit and fitness ought to be the standard for all appointments or promotions in the public service. That principle is not out of harmony with the general spirit, any specific provision or any implied doctrine

of the constitution of Illinois. Whether the act of the legislature is such as most certainly to secure its observance we are not called upon to decide. It is enough that the legislature has the power to pass it.

Our attention is called to undesirable results that might follow an attempt by the commission, conspiring with the Governor, to control the appointments in the offices of the other executive officers. Such a conspiracy is not to be presumed, but the judicial department of the government is bound to presume that the other two departments are actuated by honest motives, that the legislature passed the act with a view single to the improvement of the public service, and that all the officers of the executive department will honestly and fairly endeavor to enforce it with the same view.

The need of civil service laws has been felt in other States, and they have been adopted by the national government and by the States of New York, Massachusetts and Wisconsin. The Supreme Courts of the three States named have sustained the validity of their respective laws, and New York has embodied the principle in its constitution, adopted in 1894. (*Rogers* v. *Buffalo,* 123 N. Y. 173; *Opinion of Justices,* 138 Mass. 601; *State* v. *Frear,* 146 Wis. 251.) Much that was said in the cases of *People* v. *Kipley, supra,* and *People* v. *Loeffler, supra,* is applicable here, although the act under consideration in those cases referred to municipal officers only. The control of the legislature over the appointment of officers of a city is no more absolute than it is over those of the State where not limited by the constitution. We have not considered the various provisions of the act in detail, but only the three constitutional objections urged against the whole act as applied to the Secretary of State. The record does not disclose any repugnance between the act in question and the constitutional duties of the officers of the executive department. In our judgment, so far as any objections to it have been

brought to our attention, the act is a valid exercise of the legislative power.

The writ of *mandamus* will be denied.

*Writ denied.*

Mr. JUSTICE CARTWRIGHT, specially concurring:

In my opinion the conclusion that the peremptory writ must be denied is correct, for the reason that the relators do not exercise any power conferred or discharge any duty imposed by the constitution upon the Secretary of State. The constitution creates an executive department, consisting of a Governor, Lieutenant Governor, Secretary of State, Auditor of Public Accounts, Treasurer, Superintendent of Public Instruction and Attorney General, and, in the distribution of the powers of the government into the legislative, executive and judicial, declares that no person or collection of persons being one of those departments shall exercise any power properly belonging to either of the others, except as expressly directed or permitted by some provision of the constitution. No attempt was made to specify in detail the powers or duties of the officers of the executive department which were not to be exercised by any other department of the government, and no such specification was required. The constitution gives to the Secretary of State the custody of the great seal, and requires him to file in his office any bill presented to him by the Governor, with his objections thereto, after the adjournment of the legislature, but his designation as Secretary of State implies the performance of such clerical duties as pertain to the office of a secretary, such as the filing and preservation of State documents and writing and preserving public records of the State. In like manner the duties of a treasurer to receive and safely keep the public funds are implied from the nature of the office, and the constitution prohibits paying them out except in pursuance of an appropriation made by law and on the presentation of a

warrant issued by the Auditor thereon. No specification in the constitution of the duties of an Auditor of Public Accounts was required, but they are necessarily implied from the title of the office.

It is a legislative function to provide suitable places and means for the performance of their duties by the officers of the executive department, but it is not within the power of the General Assembly to deprive them of the powers conferred upon them by the constitution, either in express terms or by implication from the nature and designation of the office. The General Assembly could not provide that the papers and records which, under the constitution, pertain to the office of the Secretary of State, should be kept or made by some other officer, board or authority; that the moneys of the State should be received, kept or paid out by any other officer than the Treasurer; or that the accounts against the State should be audited except by the Auditor of Public Accounts. It necessarily follows that where the duties of a Secretary of State must be performed through an assistant, the General Assembly has no power to designate the assistant or deputy, either directly or through any board or other authority. The assistant or deputy is but the shadow of the Secretary and must perform all official acts in his name. It is essential to the independence of the Secretary that he shall have perfect liberty of choice and full power of selection, upon his own personal judgment and information, of those through whom he discharges personal duties imposed upon him by the constitution.

There is a constitutional provision that the officers of the executive department shall perform such duties as may be prescribed by law, and this applies to the Secretary of State. Many duties have been so prescribed by the General Assembly, but unless they are such duties as are implied from the title of the office, the General Assembly would be at liberty to impose them upon other existing of-

ficers, or officers and boards created by law. If the General Assembly may prescribe duties to be performed by the Secretary of State, it can at any time take them away and require their discharge by some other officer or some board or commission, which would not be within the legislative power if the duties pertained to the office under the constitution. The duties of the relators in passing upon the legality of petitions of foreign corporations for licenses to do business in this State, deciding upon matters relating to the legality of foreign and domestic corporations, disposing of matters regarding the formation of domestic corporations or changes therein, and the other matters mentioned in the petition, are of that character and are duties created by law and not by the constitution. Provisions for the selection of assistants to discharge such duties do not infringe upon the constitutional provision separating the powers of the government into distinct departments, and prohibiting the exercise of powers belonging to one department by any person or collection of persons constituting another department.

Mr. JUSTICE VICKERS, dissenting:

Believing that a majority of the members of this court have reached an erroneous conclusion upon the vital questions involved in this case, I desire to state the reasons upon which I base my dissent therefrom. The controlling facts are correctly stated by Mr. Justice Dunn in his opinion and need not be repeated.

I do not disagree with the majority opinion as to the legal questions which arise out of the facts presented by this record. Stripped of all unnecessary verbiage, the sole question to be determined is whether the legislature has the power, under the constitution, to take from the executive officers of the State the power to appoint such assistants and subordinates as are necessary to enable them to discharge the duties required of such officers under the con-

stitution and laws of the State. To this question the majority opinion gives an affirmative answer, and it is from that conclusion that I desire to dissent. The majority opinion very correctly states the proposition as follows: "If the constitution confers upon the Secretary of State * * * the exclusive power of appointment, the act would violate such other provision if it undertook to take such exclusive power from him and confer it on another." In the above quotation the point is conceded that the legislature cannot deprive the Secretary of State of any of his constitutional powers. This being conceded, if it can be shown that the power to appoint necessary clerks and assistants is conferred upon the Secretary of State, either by express provision of the constitution or necessary implication, it would seem necessarily to follow that the conclusion reached by the majority opinion is erroneous. In my opinion such power is necessarily implied, and I shall briefly state the reasons upon which I base this view.

Under all the constitutions that have been adopted since the State was organized, the powers of the State government have been vested in the three distinct, co-ordinate branches. Thus, under the constitution of 1870 all judicial power is vested in certain enumerated courts, the legislative power in the legislature, and the executive power in the Governor and other executive officers of the State. In this general distribution of the powers of government the delegation was complete, leaving no residuum of such powers to be subsequently disposed of. Section 1 of article 6 of the constitution provides: "The judicial powers, except as in this article is otherwise provided, shall be vested in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and such courts as may be created by law in and for cities and incorporated towns." This clause of the constitution has uniformly been held to completely dispose of the judicial powers of the State, and to prohibit the legislature from vesting judicial

functions in any courts other than those provided for in said section 1, and the Appellate Court, which is provided for in section 11 of article 6.

It has often been urged by members of the legal profession,—and not without good reason,—that our judicial system would be greatly improved if we had an appellate court created exclusively for appellate court duty wholly distinct from our circuit courts. But the difficulty in establishing such a court is, that all of the judicial powers of the State have been delegated to the courts enumerated, leaving no residuum of power in the legislature to create such appellate court, or, indeed, any court of any class or grade not specifically provided for in article 6 of the constitution. In speaking of this clause of the constitution, this court, in *Missouri River Telegraph Co.* v. *First Nat. Bank,* 74 Ill. 217, on page 220, said: "The first section of article 4 of our constitution provides that the judicial power of the State, except as otherwise therein provided, shall be vested in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and in such courts as may be created by law in cities and incorporated towns. This section has exhausted the judicial power of the people of the State. It is there fully disposed of, leaving no residuum. There is nothing in that article that can be tortured into authority to confer any of the judicial power of the State on courts of other States or the Federal courts, hence it would be palpably unconstitutional to enact such a law." The principle announced in this decision has never been departed from by this court.

Section 1 of article 4 provides that the "legislative power shall be vested in a General Assembly, which shall consist of a senate and house of representatives, both to be elected by the people." This section vests all legislative power in the two houses of the General Assembly, and the legislature cannot delegate its general legislative authority, and whatever of legislation is enacted, to have the force

and effect of a law of the State, must be passed in accordance with the constitution by such General Assembly. (*Schweiker* v. *Husser,* 146 Ill. 399.) Section 1 of article 5 deals with the executive powers of the government, and vests those powers in the Governor, Lieutenant Governor, Secretary of State, Auditor of Public Accounts, Treasurer, Superintendent of Public Instruction and Attorney General. All of the executive powers of the government are delegated to and vested in the executive officers named. No one would pretend that the legislature could create other executive State officers and vest such newly created officers with any of the executive powers of the State. As all judicial powers are vested in the courts enumerated in article 6 of the constitution and all legislative powers vested in the legislature by article 4, so is all executive power vested in the State officers enumerated in article 5, with no residuum of any of these powers remaining to be vested in other officers or departments.

When the executive powers of the State were delegated to the several State officers enumerated in article 5 of the constitution, certain specific duties were mentioned in the constitution to be performed by the different State officers. Certain duties are laid upon the Governor, others upon the Lieutenant Governor, and still others upon the Secretary of State and other executive officers named in the constitution. It must be borne in mind that there is a clear distinction between a duty and the power to perform it. The legislature may prescribe executive duties to be performed by the executive officers and judicial duties to be performed by the judiciary, but the power and authority of the officers of these departments to perform these duties are derived from the constitution. When a statute is passed by the legislature creating new rights and prescribing remedies, designating what particular court authorized by the constitution shall determine the rights and administer the remedies, there is no delegation of additional ju-

dicial power, but the power of the courts vested by the constitution is brought to bear, by legislative direction, upon new rights and remedies. It would be absurd to say that the legislature could delegate either judicial or executive powers. It has no such powers and hence cannot delegate them to other departments.

In addition to the duties expressly distributed to the several executive officers of the State, the name and nature of the several offices created necessarily imply that other functions shall be performed by the various executive officers. The implications from the provisions of a constitution are as important as its express provisions and have always been regarded in construing the constitution. In respect to the constitution of the United States the rule is established that where a general power is conferred or duty enjoined, every particular power necessary for the exercise of the one or the performance of the other is also conferred. (Story on Constitution, sec. 430; *United States* v. *Fisher,* 2 Cranch, 358; *McCulloch* v. *Maryland,* 4 Wheat. 316.) And the same rule has been applied by this court to our constitution. (*Field* v. *People,* 2 Scam. 79; *Northwestern Fertilizing Co.* v. *Village of Hyde Park,* 70 Ill. 634.) Cooley, in his work on Constitutional Limitations, on page 78, says: "That other powers than those expressly given may be, and often are, conferred by implication is too well settled to be doubted. Under every constitution the doctrine of implication must be resorted to in order to carry out the general grants of power. A constitution cannot, from its very nature, enter into a minute specification of all the minor powers naturally and obviously included in it and flowing from the great and important ones which are expressly granted. It is therefore established as a general rule, that when a constitution gives a general power or enjoins a duty, it also gives, by implication, every particular power necessary for the exercise of the one or the performance of the other."

2 5 4 — 3

When the office of Secretary of State was created it had a well defined and well understood meaning in the governmental history of Illinois. The word "secretary" is synonymous with the word "clerk" or "scribe," and it means a person employed to write orders, records and the like, so that the title "Secretary of State," in and of itself implies an officer who is charged with the duties of keeping the official records of the State,—not only as regards the acts and doings of the chief executive, but of the legislative branch as well. If one desired information as to the official transactions of a city he would naturally expect to find the record with the city clerk. If information was desired in reference to the corporate action of a private corporation it would reasonably be expected that the secretary or clerk of such corporation would have such information on his books. And so in reference to the Secretary of State. The very name itself implies a line of duties that were conferred upon the Secretary by the constitution under the doctrine of implied powers. When the office of Secretary of State was created by the constitution of 1870 all of the powers prescribed by the constitution were created and enjoined upon that officer, and such other powers as are necessarily implied from the nature of the office as well as those that are necessary to carry out those expressly conferred. It was well known, even in 1870, that the office of Secretary of State involved the discharge of duties far beyond the capacity of any single officer to perform. It must be assumed that the constitutional convention knew that in order to enable the Secretary of State to discharge the duties required of him by the constitution and those that are clearly implied from the character of his office, it would be necessary to employ numerous clerks and assistants and to subdivide the duties of the Secretary into departments, so that the immense volume of business that necessarily had to pass through that office could be systematized and performed. Still, with those facts before

the constitutional convention, no express provision was made for the appointment, by any power in the State, of a single assistant to aid this officer to discharge the duties that were known to belong to his office. And in this connection it must also be borne in mind that prior to the adoption of the constitution of 1870 it had been the uniform practice of the Secretary of State and other executive officers to exercise the power of appointing such clerks and assistants as were necessary to enable them to discharge their constitutional duties.

In view of these facts it seems to me so clear as not to admit of argument or doubt, that the power to appoint necessary subordinates in the several executive offices of the State government was necessarily vested, by clear implication, in the several officers of the executive department. I think the constitution should be construed precisely as though there was an express provision declaring that the Governor, Lieutenant Governor, Secretary of State, Auditor of Public Accounts, Treasurer, Superintendent of Public Instruction and Attorney General shall each have the power to appoint all clerks, deputies and assistants that may be necessary to enable such officers to discharge the duties required of them. If such express provision existed in the constitution there could be no doubt by whom the power to appoint such subordinates should be exercised. If a proposition to insert such provision in the constitution had been made, in all probability it would have been thought unnecessary, since from the very beginning of the State the several executive officers had uniformly and without question exercised the power of appointing their own assistants and helpers, and it doubtless would have been said that no one would suppose that the State Treasurer would ever be empowered to select the assistants for the Attorney General, or that the Superintendent of Public Instruction would be authorized to name a book-keeper in the State Treasurer's office or select a private secretary to the Governor.

Such a suggestion would have been treated as ridiculous by the constitutional convention, and it is a matter of great surprise to me that a proposition no less absurd should receive the approval of a majority of this court.

When one of the executive officers of the State appoints an assistant to aid him in performing his official duties, what sort of a power has such executive officer exercised? It is an act done in furtherance of the discharge of his executive duties and is made necessary by the fact that the duties required of him cannot all be performed by him personally. But the act of appointing is the exercise of an executive power, so it has been determined by the authorities that the making of such appointments are in their nature intrinsically executive acts. (Mechem on Public Officers, sec. 104, and cases there cited.) When the constitution conferred all of the executive powers of the State on the State officers enumerated, it necessarily by a clear implication conferred upon such executive officers the executive power to appoint such necessary assistants as would enable them to discharge the duties required of them. The power to appoint to an office or a position implies the exercise of judgment and will. The decisions of the courts, both State and Federal, are to the effect that the word "appointment" means the choice of a person to fill an office and that the selection of one for such appointment constitutes the essence of the transaction; that the selection must be the discretionary act of the officer clothed with the power of appointment, and while he may listen to the recommendations or advice of others, yet the selection must be, in its final determination, his act, and it has never been regarded or held to be merely ministerial. (*People* v. *Mosher,* 163 N. Y. 32; 57 N. E. Rep. 88.) It is a mere begging of the question to say that under the Civil Service law the commission merely designates the person who is, in fact, appointed by the executive officer. It would be just as logical to say that a patient who takes the medi-

cine prescribed for him by the doctor is his own physician. The executive officer who takes into his confidential service whoever comes to the door properly recommended by the civil service commission has nothing to do with the appointment. His hands are tied and his powers gone, and he has nothing to do but to use such material as is offered to him, however unfit such candidates may be according to the best judgment of the officer who by the constitution is charged with the performance of the duties for which such assistant has been provided. In my opinion the civil service commission has no more power, under the constitution, to appoint necessary assistants to the executive officers of the State than they would have to pass a law or decide a case pending in this court.

The cases of *People* v. *Kipley*, 171 Ill. 44, and *People* v. *Loeffler*, 175 id. 585, involve the validity of a civil service act in its application to municipal services created by the legislature, and what is there said has no application to the present law, which, in effect, deprives the constitutional executive officers of the State of their powers. This court, in the *Loeffler case*, was careful to point out the distinction between an office created by the constitution and that created by the statute, and what was decided in that case was expressly limited to the latter class of offices. A careful analysis of the majority opinion will disclose the fact that there is not a single authority cited which supports the proposition that the legislature may interfere with the power of a constitutional officer to appoint his necessary assistants. So far as the research of court and counsel in this case discloses, no such authority exists. On the other hand, every court of last resort that has dealt with this question has reached a conclusion contrary to that reached by the majority opinion. (*People* v. *Angle*, 109 N. Y. 564; *Bolton* v. *Albertson*, 55 id. 50; *Menges* v. *City of Albany*, 56 id. 374; *In re Janitor of Supreme Court*, 35 Wis. 410; *State of Indiana* v. *Noble*, 118 Ind. 35; *State*

v. *Denney,* 118 id. 382; *State* v. *Worrell,* 121 id. 495;
1 Dillon on Mun. Corp.—5th ed.—387, 397.)  According
to my view the majority opinion is contrary to sound rea-
son, not supported by authority, and, in fact, nullifies those
wholesome provisions of the constitution that were or-
dained to prevent the usurpation by one department of the
government of the powers and duties belonging to another.

If the conclusion to be drawn from the concurring opin-
ion of Mr. Justice Cartwright were applied in the case at
bar, it would necessarily result in awarding the writ for at
least two of the relators.  As I understand his special con-
currence, his view is that the legislature cannot interfere
with the appointment of any assistants to any executive
officer that are necessary to enable such officer to perform
the duties required of him by the constitution or that are
clearly implied from the title of his office; that the Civil
Service law can only be properly applied to such subordi-
nates as are required to perform that class of services which
might as well be assigned to one officer as to another.  By
reference to the petition filed by the relators it will be seen
that one of the petitioners is the chief clerk in the Secre-
tary of State's office, another is the book-keeper in the office
of the Secretary of State and the other is the chief corpo-
ration clerk in the Secretary's office.  The constitution, by
section 1 of article 5, provides that the Secretary of State
shall reside at the seat of government and "keep the public
records, books and papers there, and shall perform such
duties as may be prescribed by law," and by section 20 of
said article it is provided that "an account shall be kept
by the officers of the executive department, and of all the
public institutions of the State, of all moneys received
or disbursed by them, severally, from all sources, and for
every service performed;" and that each of said officers
shall make a semi-annual report thereof to the Governor,
under oath.  To perform the duties expressly required un-
der these constitutional provisions it is indispensably nec-

essary that the Secretary of State should have both clerks and book-keepers to assist him. Then, if the legislature can not interfere with the selection of such clerks and assistants as are necessary to enable the officer to discharge his constitutional duties and those necessarily implied from the title of his office, how can it be said that the civil service commission can designate who is to fill the positions of relators or exercise any control over them? If the line of distinction is observed which is pointed out in the concurring opinion of Mr. Justice Cartwright, the writ should be awarded in this case as to two of the relators.

FARMER and COOKE, JJ.: We agree with the views expressed in the foregoing dissenting opinion of Mr. Justice Vickers.