**William D. Moffett and The People of the State of Illinois ex rel. William D. Moffett, Appellants, v. P. T. Hicks, County Superintendent of Highways in County of Macon, State of Illinois, Appellee.**

1. COUNTIES—*when county clerk and not superintendent of highways is proper custodian of bridge plans and specifications.* The county clerk and not the county superintendent of highways is the custodian of bridge contracts with attached plans and specifications and records thereof as to township bridges built with county aid, under the provisions of the Constitution, art. 10, relative to county government and of the statutory provision prescribing it to be the duty of such clerk to keep county records, books and papers, and this duty, as to completed and accepted contracts, is not changed by the provisions of the Road and Bridge Act relative to the duties of the superintendent of highways and making it his duty to prepare such contracts, plans and specifications, and prescribing his powers and duties.

2. MANDAMUS—*when dismissal is proper on the pleadings.* A mandamus proceeding to compel the county superintendent of highways to permit the relator to inspect records of contracts, plans

and specifications of bridges constructed in certain townships with county aid, alleged to be in the superintendent's custody, for the purpose of determining whether such superintendent had been guilty of fraud and dereliction of duty in connection with the construction of such bridges, was properly dismissed where the answer of such superintendent alleged that all such records were in the custody of the county clerk, since such officer is the legal custodian, under the constitution and statutes of such records.

Appeal by plaintiffs from the Circuit Court of Macon county; the Hon. GEORGE A. SENTEL, Judge, presiding. Heard in this court at the October term, 1922. Affirmed. Opinion filed May 2, 1923.

CHARLES F. EVANS, LEE BOLAND and J. A. WALGREN, for appellants.

LEFORGEE, BLACK & SAMUELS, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

On petition for rehearing granted, and further consideration, former opinion modified as follows:

This is a petition in the name of the People and presented by the State's Attorney upon the relation of William D. Moffett, together with William D. Moffett, for a writ of mandamus. The defendant below, appellee in this court, P. T. Hicks, is the county superintendent of highways in and for the county of Macon.

The amended petition represents that the relator, Moffett, is a resident and taxpayer of said county of Macon. It represents that the appellee is the superintendent of highways in the county of Macon, and that appellee has been such superintendent since the 10th day of December, A. D. 1913. And the petitioner further represents that said appellee has occupied an office room for the transaction of his public duties in the courthouse in the City of Decatur, furnished him by the county of Macon.

The petition further avers that the appellee has in his said office and in his custody certain public records, papers and documents, the property of said

county of Macon, relating to the construction of certain bridges within said county, bridges that had been built in various townships of Macon county in which the county of Macon had, under section 35 of the Road and Bridge Act [Cahill's Ill. St. ch. 121, ¶ 40], furnished aid to the several townships, and specifically as to Slough bridge in Oakley township and Stare bridge in Whittemore township and Moomey bridge in Pleasant View township, and many others named. The petition avers as to the various bridges that the townships petitioned for the same and, under the provisions of the act, became entitled to aid from said county, and that by action of the board of supervisors, aid was voted to the said various townships in the construction of said bridges.

The petition further avers the making of plans and specifications by the said county superintendent of highways and the letting of contracts for the said bridges and the settlements and payments that had been made upon the construction of said bridges, and the certificate of the cost thereof, duly filed by the superintendent of highways, and the action of the board of supervisors in that behalf.

The petition further avers that certain of these plans, specifications and contracts had been in the possession and under the control of the said appellee and specifically as to certain bridges; for example, the Madison bridge in Blue Mound township and the Niantic bridge and some others. The petition avers the specific details of the plans and specifications as to said certain bridges, as the said plans and specifications were seen and observed by the relator in the office of said appellee, and the petition further avers the construction of various of said bridges and the measurements and material used in the construction of the same, and points out specifically variances in construction and differences in the uses of material from the measurements and material prescribed in the

Moffett et al. v. Hicks, 229 Ill. App. 296.

plans, specifications and contracts that had been made with reference to the construction of the same.

And the petition, in averments apparently sufficient, upon their face, points out defects in said bridges and differences in construction from the plans, specifications and contracts made which should result in a material lessening of cost and price of the said respective bridges to the said county and townships, as aforesaid; and the petition points out specifically changes and differences in the uses of material that, it is claimed, amounts to fraud on the part of the superintendent of highways in approving work, materials and construction different from that provided in the plans, specifications and contracts.

It appears from said petition that said projects were undertaken and said plans and specifications made and contracts entered into during the years 1917, 1918 and prior to the year 1920, and the petition recites that the facts and circumstances, the measurements of the actual work done and the examination of the actual material furnished, so discovered by the relator in relation to the construction of said bridges, the contracts relating thereto, and the payment therefor, aroused in the relator, as a resident and taxpayer of said county of Macon, a desire on his behalf and on behalf of many other residents and taxpayers in the said county of Macon to ascertain the extent to which the practices so found have been employed in the construction of the said bridges above particularly described and in the payment therefor in order that the said relator might more effectively and conclusively present to the said county board of supervisors, as the agency charged with the expenditure of the public funds of said county, the full and complete facts and circumstances which have attended the expenditure of the public funds of said county for bridge purposes, to the end that said board of supervisors may see more clearly the existence of such facts

and circumstances and act thereon to prevent their recurrence, and thus more nearly safeguard the public funds of said county in the future and in order that the realtor might, if circumstances should warrant, bring a proper and appropriate action in a court of competent jurisdiction, or, as relator therein, cause the same to be brought, to the end of recovering to the funds of said county and township so found to be interested, any moneys which may have been illegally or fraudulently paid out or received from said funds by virtue of any matters or things connected with the said bridges or said contracts.

A demurrer was interposed to the petition by appellee, which was overruled by the court, and appellee answered the petition.

Appellee's answer contains much extraneous matter, but it admits that appellee is and has been the county superintendent of highways, for the period set out in the petition; that the bridges, substantially as charged, were constructed with county aid and that the appellee prepared the plans and specifications, and that the contracts were entered into by the county board, as charged in the petition, and that the plans and specifications as prepared by appellee were adopted, attached to and formed a part of the contracts entered into by the county board with the various contractors. The answer specifically denies all charges of fraud, defective work or dereliction of duty. The answer further denies that the papers and documents required are in possession of appellee and the answer contains many allegations, conclusions of law, that it is not the duty of appellee to keep a record of such proceedings, and that all such papers and documents are properly on file with the county clerk. It is further charged in said answer that the petitioner was an applicant for the same office and had had access to all such papers and documents while they were being prepared by appellee and had made copies of the same, and that the suit was instituted by petitioner for political purposes,

and to harass and annoy appellee. There was a de-murrer to the answer, which was overruled by the court. There was a replication by petitioner, denying that said papers were on. file with the county clerk; that the petitioner had ever had information about or the right to inspect said papers and documents, and petitioner further denied that his purpose, in said suit, was to annoy and harass the appellee, or that it grew out of political controversies.

On these pleadings a pretended issue of law was made up and the cause set down for hearing and trial. The cause, by agreement, was heard by the court, and the trial consisted of a motion and tender on the part of appellee to submit, in open court, to the petitioner all records in the hands of appellee connected with his said office, and upon this tender appellee was sworn and identified a small book containing certain entries as to material purchased by the various townships, costing over $200, and the approval by the appellee of such purchases, which he testified was all the rec-ords he had in connection with said office, and there-upon the court dismissed the suit.

In the condition of the pleadings, the pretended hearings and trial was very much of a farce and was over the objections of appellant, for which, on the former hearing, this court reversed and remanded said cause for another trial. On reviewing the record, on a petition for a rehearing, it is the view of this court that the pleadings present no issue of fact to be tried. The lower court should have sustained the de-murrer to appellant's petition, or on the coming in of appellee's answer awarded the writ in accordance with the prayer of the petition.

The question is raised in this case as to the duty of county superintendents of highways to keep a record of the contracts, to which are attached the plans and specifications prepared by such superintendents, made by county boards, in furnishing county aid, and a rec-

ord of such plans and specifications. If such duty does not fall upon such county superintendents, then the cause was properly dismissed and the question should have been settled on the pleadings and this court should settle it on this appeal.

Section 8, ch. 121, Rev. St. [Cahill's Ill. St. ch. 121, ¶ 8] creates the office of county superintendent of highways, the method of appointment, the term of office and its duties. Clause 1 of section 8, as to duties, provides: "Prepare plans, specifications and estimates for all bridges to be built by the county. Such plans and specifications, before being finally adopted, shall be submitted to the State Highway Commission and approved by them."

Clause 2. "Act for the county in all matters relating to the supervision of the construction and maintenance of any road or bridge constructed or maintained at the entire expense of the county or at the joint expense of the county and any town or road district therein, as hereinafter set forth."

Section 35 [Cahill's Ill. St. ch. 121, ¶ 40] in reference to aid by the county provides:

"When it is determined by the county board to grant the prayer * * * the county board shall thereupon enter an order directing the county superintendent of highways to prepare plans and specifications for such improvement. The contract for such improvement shall thereupon be let in the manner authorized by said county board, subject to the provisions of the law relating to the letting of contracts," etc.

This section has a proviso, as follows:

"When the cost of the work is less than one thousand dollars, no county, town, road district, city or village shall be liable for any part of such expense or compelled to pay any part of its appropriation for such purpose until all of the work has been fully completed and accepted by the county superintendent of highways, and such acceptance properly certified to by said officer and presented to the county board,

\* \* \* which certificate shall contain an itemized account of the expenditures; and a copy thereof shall be filed with the town \* \* \* clerk.''

It is further provided that when the cost exceeds $1,000, partial payments may be made, but that: ''The partial payments shall in no way be deemed an acceptance of the work until the same has been fully completed and accepted by the county superintendent of highways and such acceptance properly certified as provided in this section.''

Article 6, covering sections 40 to 104a, Hurd's Rev. St. 1917 [Cahill's Ill. St. ch. 121, ¶¶ 46-113] covers the township provisions of the law as to roads and bridges and it is provided that no contract can be let by the town or district commissioners, or purchases of material had, in excess of $200 without the approval of the county superintendent of highways.

Section 68 of this article [Cahill's Ill. St. ch. 121, ¶ 75], covering town or district contracts and purchases until 1919, provided: ''The county superintendent shall keep a record of all contracts approved by him.''

In 1919 the legislature amended said clause by striking out the word ''*contract*'' and inserting the word ''*payment*'' in lieu thereof.

In no other section is the county superintendent directly commanded or directed to keep records and the effect of that clause as to town contracts was obviated in 1919.

Section 51 of the Act [Cahill's Ill. St. ch. 121, ¶ 57] makes it the duty of the town clerk to have the custody of all records, books and papers of the town or road district, etc. And it would seem that there could be little question that in so far as the township and road districts were concerned, in their particular matters, that the town clerk was the final custodian of all such instruments. This is accentuated under section 121 [Cahill's Ill. St. ch. 121, ¶ 130] of the township act as to gravel, rock and macadam—hard roads, wherein

it is provided: "The commissioners shall keep a full and accurate record of all their proceedings under this act, and shall, upon the completion of the road, file with the town or district clerk all records, papers, plan, plats, estimates, specifications and contracts, and shall make a full report to and settlement with the board of town auditors or district clerk, as provided in section 50 of this act." The last of this section might imply that the plans, specifications and contracts were to remain in the hands of the county superintendent of highways and the commissioners until the completion of the contract.

It is provided that the county superintendent, other than as specifically indicated, shall, to all intents and purposes, be regarded as a deputy to the state highway engineer and the "duties and powers" of the state highway engineer and his assistant, section 4 [Cahill's Ill. St. ch. 121 ¶ 4], provide that they "shall be the administrative and technical agents of the state highway commission and shall be generally subject to the orders of the state highway commission." The county superintendent doubtless acts in a similar capacity to the county board, in county affairs. The state highway commission is clothed with certain enumerated powers (section 3, clause 12) [Cahill's Ill. St. ch. 121, ¶ 3] to "Perform all other duties prescribed in this act or reasonably inferable therefrom."

We believe the act and the powers granted to the department and its various officers should be liberally construed, to aid in accomplishing the end sought by this legislation.

Appellant contends that the county superintendent of highways, being a municipal officer, is required to have an office and there preserve and keep the record and data of plans and specifications prepared by him, for the county and the contracts entered into by the county, jointly, with the various towns, in the building of county aid bridges. All of the bridges in question, as alleged in the petition, have been constructed

under the law; contracts made, theretofore, to which the plans and specifications, prepared by appellee, had been attached, and settlements have been made by the county board, acting jointly with the various townships.

The nature of the official position held by the county superintendent of highways is to some extent affected by the constitutional provisions establishing county government. Counsel on both sides have argued this case, ignoring such provisions, which must be considered in explaining the legislative intent, as to some of the provisions of the Road and Bridge Act. The fiscal and county affairs of counties are recognized in the Constitution (article 10) and are to be managed by a board of county commissioners, except where the township government, to be provided by the legislature, is adopted. County offices are established— county judge, county clerk, sheriff, etc.—a complete scheme of county government is established. In pursuance of these constitutional provisions, the legislature has provided the full detail of county government, some of the functions and powers of the county board being worked out and accomplished through statutory officers, inferior boards and agencies, under and subservient to the county boards.

As to the constitutional office of "county clerk," the legislature has provided, chapter 35, sec. 9 [Cahill's Ill. St. ch. 35, ¶ 9]: "The county clerk shall have the care and custody of all the records, books and papers appertaining to and filed or deposited in their respective offices, and the same shall be open to the inspection of all persons without reward."

Section 10 [Cahill's Ill. St. ch. 35, ¶ 10]: "The duties of the county clerk shall be—

"1st. To act as clerk of the county board of his county and to keep an accurate record of the proceedings of said board," etc.

"7th. Such other duties as are or may be required by law."

It was doubtless constitutional for the legislature to provide for the construction and maintenance of county roads and bridges, by the county board, through the assistance of an administrative and technical agent appointed by the county board. *Morrison v. People,* 196 Ill. 454; *People v. Kipley,* 171 Ill. 44; *People v. Loeffler,* 175 Ill. 585.

The office of county clerk was an office known to the common law, and by creating this office the constitution engrafted upon it all the common-law powers and duties of a county clerk and thus permitted the legislature to confer upon him only new and additional powers, but the legislature could not strip him of his time-honored and common-law functions and devolve them upon incumbents of other offices 'created by legislative authority. Archbold's Blackstone, vol. 1, pp. 13, 113, 185, 359; *Dahnke v. People,* 168 Ill. 102; *Fergus v. Russel,* 270 Ill. 304; *People v. McCullough,* 254 Ill. 9; *Witter v. Cook County Com'rs,* 256 Ill. 616.

In *Dahnke v. People, supra,* the board of county commissioners of Cook county, through a custodian, assumed charge of the courthouse, as a part of the county property, and certain judges were locked out from their court rooms. The court says, p. 112:

"Sheriffs, as elected under the constitution, have the same powers with which they were clothed at common law. Murfree, in his work on Sheriffs (sec. 42, ch. 2), says: 'The very name and office of sheriff imply the possession by that functionary of all the powers, and the obligation to perform all the duties of a common-law sheriff, except so far as those powers and duties may have been modified by State constitutions or constitutional statutes.' The same author also says: 'When the office of sheriff is a constitutional office in any State, recognized and designated *eo nomine* by the constitution as a part of the machinery of the State government, the sheriff, *ex vi termini,* must possess, in that State, all the substantial powers appertaining to the office by common law. It is competent for the State legislature to impose upon him

new duties growing out of public policy or conven-
ience, but it cannot strip him of his time-honored and
common-law functions and devolve them upon incum-
bents of other offices, created by legislative author-
ity.' ''

In *Fergus v. Russell*, the court had before it the con-
sideration of the office of Attorney General, as created
by the constitution, and held that it was an office
known to the common law, and that under the common
law the Attorney General had well-known and well-
defined powers and it was incumbent on him to per-
form well-known and clearly prescribed duties.

In *People v. McCullough, supra*, p. 27, in the special-
ly concurring opinion of Mr. Justice Cartwright,
speaking of a similar constitutional office, Secretary
of State and Treasurer, it is said:

''No attempt was made to specify in detail the pow-
ers or duties of the officers of the executive depart-
ment which were not to be exercised by any other
department of the government, and no such specifica-
tion was required.  The constitution gives to the Sec-
retary of State the custody of the great seal, and
requires him to file in his office any bill presented to
him by the Governor, with his objections thereto, after
the adjournment of the legislature, but his designation
as Secretary of State *implies the performance of such
clerical duties as pertain to the office of a secretary,*
such as the filing and preservation of State documents
and writing and preserving public records of the
State.  In like manner the duties of a treasurer to re-
ceive and safely keep the public funds *are implied*
from the nature of the office.   *   *   *   (p. 28)  It is
a legislative function to provide suitable places and
means for the performances of their duties by the
officers of the executive department, but it is not with-
in the power of the General Assembly to deprive them
of the powers conferred upon them by the constitution,
either in express terms or *by implication from the
nature and designation of the office.*   *   *   *   Many
duties have been so prescribed by the General Assem-
bly, but unless they are such duties as are implied
from the title of the office, the General Assembly would

be at liberty to impose them upon other existing officers."

In *Witter v. Cook County Com'rs, supra,* p. 622, the court held that: "A sheriff and clerk are essential to a court and to the exercise of judicial power, but the one performs executive and the other clerical duties, merely." Much more is the exercise of such executive and clerical duties necessary in the government of counties, which is merely a portion of the sovereignty of State, exercised, as provided in the organic law, by county government. It was known to the common law, and the sheriff or Shire Reve, represented the Earl: "And all the inferior officers were supplied by the 'lower clergy,' which has occasioned their successors to be denominated 'clerks' to this day."

The fact that the offices of sheriff and county clerk are established by the constitution render them subject to legislation as a class, which may not apply to others, performing similar work. *People v. Nellis,* 249 Ill. 23.

The Road and Bridge Act, and the duties and powers of the county superintendent of highways, was enacted and prescribed in harmony with this construction of the office of county clerk, a constitutional office. The county superintendent is required to prepare plans and specifications, which must be approved by the state highway commission and then may be adopted by the county board, and submission made for bids. Until such plans are so adopted by the county board, they are in embryo—mere useless sheets—mere tentative drawings, and useless for any purpose and not a public document. To be adopted by the county board, official action by such board must be taken, in form the same as in any other official action taken by the county board. Upon the submission of bids, a contract is entered into and these plans and specifications are attached to and become a part of

this contract. The letting of such a contract must be by official action,—a resolution offered in a public meeting of the county board, where the votes are taken and recorded and of which a record must be kept, after which the contract, together with the plans and specifications, become a public document, which prudence would require should be in custody for safekeeping in the hands of some person provided by law. Appellee contends that this power of custody, under the Road and Bridge Act, has passed to the county superintendent of highways. No provision of that act effects such requirement. The preparation of plans and specifications for bridges and the letting of such contracts was just as much in vogue before the establishment of this new office as it has been, under the law, since the creation of the state highway commission and the office of county superintendent of highways. The building of bridges and the construction of highways, or the aiding therein, has been a function of county government since time immemorial and nothing in the present Road and Bridge Act has created a new subject, over which county boards, for the first time, have taken jurisdiction. Neither is the adoption of plans and specifications or the letting of contracts for such improvements a new departure, in the official acts of county boards, for which their clerks or county clerks should be remiss and not construe them, as a part of their ancient, common and constitutional privilege and duty to keep a record of and preserve. The clerks should act in these matters the same as in all other matters of contracts entered into by the county board. We do not construe this new act to provide, either in language or by inference, that when the subject of roads and bridges is before the county board that the county superintendent of highways takes the place of the county clerk and acts as clerk of the county board. The full consideration of all the provisions of the Road and Bridge Act, when read in the light of constitutional construction, not only does

not lead to that inference, but refutes it, in the affirmative provisions as to township roads and contracts. Even if the act attempted to devolve this duty upon such county superintendents, it is the opinion of this court that such provisions could not strip the county clerk of his constitutional duties. The cases cited by appellee are applicable to public documents, in the hands of a public official required to keep the same, but do not apply to this case. It is not the duty of county superintendents of highways to act as clerks of the county board, in road and bridge matters, or to keep and preserve copies of plans and specifications adopted or contracts entered into by county boards, in their hands for public inspection. All such plans and specifications, when adopted, and made a part of a contract duly entered into by the county board, pass into the custody of the county clerk, become a public document, and should be open to proper inspection.

This is not a case where such plans and specifications are or may be in the hands of the county superintendent by order of the county board, prior to making contracts or for the submission of bids, as a depository, as, it might be argued, under some circumstances, could be lawfully provided for, in the purchase of material or letting contracts, of which we express no opinion; but this petition covers only records of contracts which have been completed, the bridges constructed and accepted by the county board, and all payments made and completed.

In the case as made, it is the opinion of this court, that the county clerk was and is the only proper depository of all such documents and records, and with which the respondent had no official connection.

There being no error in the final order of the circuit court the same is affirmed.

*Affirmed.*