Newcomb *v.* The City of Indianapolis *et al.*

No. 17,400.

## NEWCOMB *v.* THE CITY OF INDIANAPOLIS ET AL.

MUNICIPAL CORPORATION.—*City of Indianapolis.—Power to Adopt Civil Service Rules.—Examining Board.*—The city charter of the city of Indianapolis authorizes the adoption of rules and regulations and the creation of a board of examiners as a means of ascertaining the comparative fitness of applicants for office, position, and promotion, and of selecting, appointing and promoting those found to be best fitted, except in the department of public safety, without regard to political opinions or services.

SAME.—*Political Policy or Wisdom of Granting Such Power Not a Question for the Court.*—The question relative to the political policy or wisdom of the Legislature in granting such power, or as to the propriety or necessity of the "mayor's cabinet" in carrying the same into effect by adopting civil service rules, is of no concern to the court, and a matter over which it has no control.

SAME.—*Charter.—Rules of Construction.*—The charter or statute by which a municipal corporation is created or governed is its organic law, and the rules applicable to the interpretation of constitutions may be used in the construction thereof.

SAME.—*Implied Powers.—Statute.*—If a statute grants a right or imposes a duty, it also confers, by implication, every particular power necessary for the exercise of the one or the performance of the other.

SAME.—*Governmental Agency.—Civil Service.—Discretion.—Noninterference by Court.*—It was clearly the legislative intent that the governing body, composed of the heads of the several departments, vested with the right or power in question, should be clothed with a reasonable discretion as to the medium, agency, or means to be employed to give effect to the provisions of the law, and that discretion will not be interfered with or called in question by the courts, except where the power is exceeded or fraud imputed or shown, or in case there is a manifest invasion of private rights.

SAME.—*Civil Service Agency.—Statute Construed.*—The creating of a board of examiners, which is but a medium or agency by which the comparative fitness of applicants for position or promotion might be ascertained, was not an attempt to establish an independent executive or administrative department in violation of the prohibition in section 48 of the statute (3819, R. S. 1894).

From the Marion Circuit Court.

*W. V. Rooker*, for appellant.

*R. W. McBride* and *J. E. Scott*, for appellees.

JORDAN, J.—Appellant, as a citizen and taxpayer of the city of Indianapolis, instituted this action in the lower court for an injunction. As against the municipal corporation and its several officials, appellees herein, it was sought by the action to enjoin them from turning over their official functions or duties, alleged to be incumbent upon each, to appellees, Denny, Daniels, Pickens, Brown and White.

It is charged in the complaint that these last mentioned persons are assuming to act as a pretended board of examiners, after the manner of a "civil service commission," and are thereby interfering with the various departments of the city, in the discharge of duties defined and imposed by law, by requiring the city and its properly constituted officers to relinquish to said board the duty of selecting and supervising the subordinate employes of said city, and appellant asks that they be restrained from intermeddling with the affairs of said city, etc.

The complaint, after describing the several departments of municipal government, and referring to the duties of the official heads thereof, proceeds with the following averments: "* * * That on the 13th day of February, 1894, at a meeting of the mayor with the heads of the several departments, rules and regulations were adopted for the appointment and promotion of the employes of said city."

Copies of these rules are filed as exhibits therewith. Considering the complaint as an entirety, it is evident from its general scope and character, that it seeks to assail the validity of the action of the mayor, and the heads of the departments of the city of Indianapolis, in

the adoption of the rules mentioned therein, denominated "civil service rules," for the appointment of the employes of the city, and also the right of the board of examiners created thereby to exercise any powers thereunder.

The pleading proceeds upon the theory that there is no grant of authority, under the city's charter, to adopt the rules and regulations in question, or to create the board of examiners. A demurrer was sustained to the complaint, and this is the only error assigned. The grounds of the contentions of appellant's learned counsel are, substantially, as follows:

"1st. That the rules in controversy operate as an unwarranted abridgement of the powers of the heads of departments, and require them to surrender unto unauthorized and irresponsible persons certain functions or duties which the law enjoined upon these officials.

"2d. That by the creation of the board of examiners there is an attempt to establish an independent, executive or administrative department of the municipal government in violation of law."

On the side of appellees, their learned counsel contend, "that the rules and regulations, under the charter, are required to be adopted (and in this case were) by the mayor and all of the heads of the several departments (except that of assessment and collection) acting together; that it was the legislative intention that when these rules were adopted they should be paramount and controlling upon the heads of these departments; that it was the object of the Legislature when it enacted the statute for the government of the city, to put the administration of its affairs upon a practical business basis and thereby have the city conducted as a business institution is operated, instead of being run as a 'political machine'; that as aids to accomplish this purpose they

contend that it appears to have been the legislative intent:

"1st. To secure, so far as possible, uniformity in the methods of administering the affairs of the several city departments, by substituting for the individual will and caprice of the several heads of departments, rules and regulations adopted by all acting together, and representing their collective judgment.

"2d. To make business capacity instead of political activity the prime qualification for place among the servants of the city.

"3d. To require the adopting of a systematic method which should be common to all departments of the city government (except one) for ascertaining the comparative fitness of 'all applicants for office, position and promotion, and of selecting, appointing and promoting those found to be best fitted,   *   *   *   without regard to political opinions or services.'

"4th. That these rules and regulations when adopted should be paramount to any rules and regulations which might be adopted by the heads of departments for the government of their own subordinates, and should control the individual action of the heads of departments."

In order to determine the questions presented by this appeal, it will be necessary to examine and consider the scope and character of the series of rules and regulations in controversy, as they are presented by the record, and which are alleged to have been adopted by the mayor and the several heads of departments. Rules 1 and 2 are as follows:

"Rule 1. The mayor shall appoint from among the officers or the employes of the city, two persons, and two other residents of Indianapolis, not connected with the city service, who, together with the mayor as *ex officio* chairman, shall constitute the 'Board of Examin-

ers.' All such persons shall serve without pay. Not more than three members of said board shall be of the same political party. Three members of such board shall constitute a quorum. The board shall elect a secretary (either of his own number or otherwise), who shall keep records of all its proceedings, which records shall be open to the inspection of the public. This board shall conduct by themselves or by their appointees, all examinations held under these regulations, to ascertain the comparative fitness of applicants for position and promotion. The secretary of the board shall also keep all necessary records of applicants, their examinations and standings, and a complete record of all persons employed in the several departments, and of all appointments, promotions, dismissals, resignations and changes of any sort therein.

"Rule 2. For the purpose of 'ascertaining the comparative fitness of applicants for employment, and of selecting and appointing those found to be best fitted, without regard to political opinions or services,' the board of examiners will designate qualified persons (either from their own number or otherwise) to conduct examinations, and may at any time substitute another person in place of anyone so selected. Whenever the qualifications required for a position are such as that assistance from experts in conducting the examinations is desirable, such experts may be designated to aid the examining board, as so far as practicable such experts shall be persons employed in the department to which the applicant seeks admission."

Rule three classifies the offices and places to be filled thereunder, and this classification embraces all the subordinate employes of the city.

Number four defines the qualification of applicants for positions.

Five relates to the manner of making applications.

Six applies to the character of examinations of applicants.

Rule seven refers to the marking and grading of applicants upon examination.

Eight defines the duty of a city official in the appointment of an employe.

The ninth rule is as follows:

"Rule 9. No person shall be appointed to any position or given any employment in which an examination is required, or in which the appointment is made by promotion, or in any other manner herein described, except in cases of emergency for not more than thirty days; and no person specially appointed shall be reappointed after said thirty days, except by examination and promotion. If there be no names upon the eligible list when such appointment is required to be made, a new examination shall be held with all possible dispatch.  Every original appointment made after examination shall be for a probationary period of two months, at the end of which time, if the conduct and capacity of the person appointed be found satisfactory, the probationer shall be absolutely appointed, but otherwise he shall be deemed out of the service.  The officer under whom the probationer shall serve shall carefully observe the value of the service rendered and report the fact to the secretary of the board of examiners, together with his conclusion at the end of the probationary term.  Every person or board having power of appointment shall, within ten days, notify the secretary of the board of examiners of the name and place of residence of any person appointed or rejected, and of the transfer, promotion, resignation, removal, discharge or death of the persons serving under him, with the date thereof.  Transfers with the classified service may be made without examination from a position in one de-'

partment to a similar position in another department, provided that no employe shall be transferred from any position or employment for which no examination was required to one for which an examination is required. The board of examiners may, in its discretion, order examinations for promotions from classes of the lower grade to classes of a higher grade.''

Rule ten provides for the registrations of applicants, and eleven provides that no person shall defeat or obstruct any person in respect to his right of examinations, etc.

The question involved in the case at bar relative to the validity of these rules and regulations requires an examination of the statutory provisions under which the appellees claim that the several officials of the city denominated ''heads of departments'' had the power, when convened in a body, to adopt them.   At the time of the adoption thereof, by this body, called, by counsel, ''the cabinet,'' the city of Indianapolis was managing its municipal affairs, and operating under an act of the Legislature approved March 6, 1891, entitled ''An act concerning the incorporation and government of cities having more than one hundred thousand population, etc.''   Acts of 1891, p. 137.

Section 45 of this act, being section 3816, R. S. 1894, in part, is as follows:

''Sec. 45.  It shall be the duty of the mayor   *   *   * to call together the heads of departments, except of assessment and collection, for consultation and advice upon the affairs of the city at least once a month, and to call on the heads of all departments for reports from the same, which it shall be their duty to prepare and submit in writing.   Records shall be kept of such meetings above provided for, and rules and regulations shall be adopted thereat for the administration of the affairs

of the city departments, not inconsistent with any law or ordinance, which regulations shall prescribe a common and systematic method of ascertaining the comparative fitness of applicants for office, position and promotion, and of selecting, appointing and promoting those found to be best fitted, except in the department of public safety, without regard to political opinions or services.''

Section 48, being section 3819, R. S. 1894, in part, is as follows:

"Sec. 48. The following executive departments are hereby established in such city:

"a. Department of finance.

"b. Department of law.

"c. Department of public works.

"d. Department of public safety.

"e. Department of assessment and collection.

"f. Department of public health and charities.

"No other executive or administrative departments shall be established in such city. Subordinate officers and employes not herein provided for shall be appointed by the heads of * departments. Each department shall have power to prescribe rules and regulations not inconsistent with any statute or ordinance, or regulation established pursuant to section 45 of this act, for its own government, regulating the conduct of its officers, clerks and employes, the distribution and performance of its business, and preservation of books, records, paper and property under its control. * * * All official business of the several departments shall be transacted at the offices thereof, and a continuous record or minute shall be kept at said offices respectively of such business. The officer or officers at the head of any department may appoint and remove any of his or their clerks or assistants, subject to any regulations adopted pursuant to section 45 of this act. * * *''

The authorities cited by counsel for appellant in support of his contentions "are few and far between." No question seems to be raised as to the right of the Legislature to authorize the adoption of these rules, and we think that no reasonable objections can be urged or interposed against this legislative grant of power to the municipal authorities. The question relative to the political policy or wisdom of the Legislature in granting this power, or as to the propriety or necessity of the "mayor's cabinet" in carrying the same into effect by adopting these "civil-service rules," is of no concern to this court and a matter over which it has no control. The expediency or inexpediency of the action upon the part of this municipal body in the adoption of these regulations by the methods or means designated, by which the fitness of persons who apply for office or position in the public service may be ascertained and whereby the services of those best fitted may be secured without regard to political opinions or party fealty, is a question to be determined solely by the body invested with the authority by the statute for the adoption of the rules in controversy.

Recurring again to the cardinal points in issue: Can the contentions of the appellant, that these rules operate as an unwarranted abridgement of the rights of the heads of the several departments of the city's government and as a surrender of functions which, under the charter, devolved upon them, and also that the board of examiners, created by rule one, constituted an independent department in violation of law, be sustained? It appears, from section 45 of the charter, that the duty of convening the heads of the departments, except that of assessment and collection, is enjoined upon the mayor, and that rules and regulations shall be adopted by these several official heads when so convened for the administra-

tion of the affairs of the city departments, not inconsistent with any law or ordinance, which regulations shall prescribe a common and systematic method of ascertaining the comparative fitness of applicants for office, position and promotion, and of selecting, appointing and promoting those found to be best fitted, except in the department of public safety, without regard to political opinions or services.

By section 48, the departments therein mentioned are established, and all other executive or administrative departments are prohibited. This section further provides that ''Each department shall have power to prescribe rules and regulations not inconsistent with any statute or ordinance or regulations established pursuant to section 45 of this act.    *    *    *''

''The officer or officers at the head of any department may appoint and remove any of his clerks or assistants subject to any regulations adopted pursuant to section 45 of the act,'' etc.

This power to enact rules and regulations to carry out the legislative purpose is expressly given and recognized by the provisions of the sections to which we have herein referred; hence, being clothed with this power, the inquiry arises, did this body, composed of the heads of departments in question, properly exercise it by employing the means which it did for carrying it into effect? When a statute grants a right or imposes a duty, it also confers, by implication, every particular power necessary for the exercise of the one or the performance of the other. Bishop Stat. Crimes, section 137; Suth. Stat. Constr., sections 428 and 531; 1 Kent Com. 404; *Field* v. *People*, 2 Scam. 79; *Stief* v. *Hart*, 1 N. Y. 20; *Mayor, etc.*, v. *Sands*, 105 N. Y. 210.

But it is also elementary that when the statute gives or provides the means for the exercise of the power those

means, and no other, must be employed. The charter, or statute, by which a municipal coporation is created or governed, is its organic law. Dillon Munic. Corp., section 89. Therefore the rules applicable to the interpretation of constitutions may be properly considered in the construction of a municipal charter.

In Judge Cooley's work on Constitutional Limitations, at star pages 63 and 64, it is said:

"That where a general power is conferred or duty enjoined, every particular power necessary for the exercise of the one, or the performance of the other, is conferred. * * * * * *

"Under every constitution implication must be resorted to, in order to carry out the general grants of power. A constitution can not from its very nature enter into a minute specification of all the minor powers naturally and obviously included in and flowing from the great and important ones which are expressly granted. It is therefore established as a general rule that when a constitution gives a general power, or enjoins a duty, it also gives, by implication, every particular power necessary for the exercise of the one or the enjoyment of the other."

The principle involved by the manner in which the power granted by section 45, *supra,* was exercised, by and through the means and agency provided by the rules and regulations in controversy, is admirably and clearly stated by Judge Dillon as follows:

"It has long been an established principle in the laws of [municipal] corporations, that they may exercise all the power within the fair intent and purpose of their creation which are reasonably proper to give effect to powers expressly granted. In doing this, they must [unless restricted in this respect] have a choice of means

adapted to ends, and are not to be confined to any one mode of operation.'' Dillon Munic. Corp., section 91.

In section 94 of this work it is further said:

''Power to do an act is often conferred upon municipal corporations, in general terms, without being accompanied by any prescribed mode of exercising it. In such cases the common council, or governing body, necessarily have, to a greater or less extent, a discretion as to the manner in which the power shall be used. This discretion can not be judicially interfered with or questioned except where the power is exceeded or fraud imputed or shown or there is a manifest invasion of private rights.''

The following authorities also support the principles above enunciated: *Miller* v. *Board, etc.,* 66 Ind. 162; *City of Richmond* v. *McGirr,* 78 Ind. 192; *City of Anderson* v. *O'Conner,* 98 Ind. 168; *Duncan* v. *Board, etc.,* 101 Ind. 403; *Hitchcock* v. *Galveston,* 96 U. S. 341.

As we have seen, the charter expressly gave the power in general terms to adopt rules and regulations without being accompanied by any prescribed means or mode to be provided by the regulations or rules that ''shall'' be adopted for the purpose of carrying out the power so granted. It was clearly, we think, the legislative intent that the governing body (being in this case composed of the heads of the several departments), vested with the right or power in question, should be clothed with a reasonable discretion as to the medium, agency or means to be employed or provided to give effect to the provisions of the law. This being true, the rule stated by Judge Dillon, that this discretion will not be interfered with or called in question by the courts except where the power is exceeded or fraud imputed or shown, or in case there is a manifest invasion of private rights, must control.

It can not in reason be said that creating the board of examiners, which was but a medium or agency through which the comparative fitness of applicants for position or promotion might be ascertained, was an attempt to establish an independent executive or administrative department in violation of the prohibition in section 48 of the statute, or that by the adoption of these rules by this body it so exceeded its power, or violated any law so as to give appellant any legal or equitable grounds for complaint. We discover nothing in the rules and regulations, which tends to deprive the municipal officials of any right or power given to them by law. The right of making appointments, conferred upon the several heads of the departments by the charter, is by section 48 thereof expressly made subject to any regulations adopted pursuant to section 45 of the same act.

The evident object of the Legislature, as it appears from the words employed, namely, "appointing and promoting those found to be best fitted without regard to political opinions or services," was to make the fitness of the applicant the test or basis in support of his claim to the place or promotion desired, regardless of his political opinions or party services.

It follows that the contentions of appellant have no support in law, and consequently can not be sustained. The case of *Benjamin* v. *Webster*, 100 Ind. 15, cited and relied upon by appellant as controlling, in this cause, has no application under the facts as they exist herein. The question involved in that case was as to the power of the city of Indianapolis under the law by which it was then governed, to create a fire board and clothe it with powers and duties granted by the statute to, and imposed upon, other city officials.

This court on page 19 of the opinion said:

"In creating the fire board and in prescribing the powers and duties of such board, those ordinances certainly contravened the express provisions and the clear implications of the statute under which the city was and is incorporated. The creation of the fire board was wholly unauthorized by the statute, and it was impliedly forbidden thereby. Powers and duties were attempted to. be given to such board, some of which the statute imposed upon the common council as a body, and some were the plain statutory duties of the chief engineer of the fire department."

It is further claimed by appellant that unless the court will interpose and restrain the city authorities, expenses will be incurred by the board of examiners for clerk hire, stationery, etc. As the power exists to create this board and enforce these rules, it incidentally results that the power also exists to incur necessary and reasonable expenses, for which the city will be liable.

The facts alleged in the complaint do not entitle appellant to any relief, legal or equitable, and the court did not err in sustaining the demurrer.

Judgment affirmed, with cost.     All concur.

