190 So. 280

**HECK, State Comptroller, v. HALL et al.**

3 Div. 303.

Supreme Court of Alabama.

June 29, 1939.

Thos. S. Lawson, Atty. Gen., and Chas. L. Rowe, Atty. Gen., for appellant.

J. M. Bonner, Legal Adviser to the Governor, of Montgomery, for appellees.

KNIGHT, Justice.

I. C. Heck, the Comptroller of the State of Alabama, impressed that the Act of the Legislature, Regular Session 1939, approved March 2nd, 1939, and known as the "Merit System Act" was unconstitutional, and therefore void, brought this proceeding in the Circuit Court of Montgomery County against the respondents, Grover C. Hall, Thomas E. Kilby and John H. Peach, as Members of the State Personnel Board of the State of Alabama, and I. J. Browder, as State Director of Personnel of the State of Alabama, for declaratory judgment as to the validity of said Act.

It was insisted in the court below, and the insistence is renewed here on this appeal, that said Act is obnoxious to a number of the provisions of the State Con-

stitution, particularly Sections 1, 21, 42, 43, 44, 45, 70, 112, 134, 137, 139, 164 and 166.

In the outset it may be stated that the entire Act is highly remedial, and should be liberally and favorably treated and construed with reference to the evils it was intended to curb, and the highly beneficent aims that inspired its adoption. Chittenden v. Wurster, 152 N.Y. 345, 46 N.E. 857, 37 L.R.A. 809.

It is generally recognized that the legislature may enact laws providing that appointments to office, or to places of employment, according to merit and fitness, and that such merit and fitness shall be determined by examinations competitive, or otherwise. People ex rel. Akin v. Kipley, 171 Ill. 44, 49 N.E. 229, 41 L.R.A. 775.

"The whole subject of the creation of offices, the delegation and regulation of the powers and duties of officers, and the prescribing of the manner of their appointment or election, comprises functions which are inherently legislative and cannot be considered as in violation of constitutional provisions separating the three main departments of government, the legislative, executive and judicial. Therefore, the expediency of adopting civil service regulations, and the wisdom of the means and methods established by which fitness of persons· who apply for office or position in the public service may be ascertained, are generally recognized to be questions determinable solely by the legislature. The decisions have uniformly upheld this general right of the legislature to establish civil service systems, the few attacks which have been successful in assailing such laws having been based on some special requirements of the law or some peculiar constitutional provision. Since the right to hold public office is not a natural right of the citizen, or one guaranteed to him by the constitution, the making of an appointment to public office dependent upon fitness, to be ascertained as far as possible by competitive examination, does not create an unconstitutional discrimination between different classes of citizens in regard to the right to enter upon and continue in the public service. *A public office is not the property of the office holder* within the constitutional provision against depriving a man of property, nor does it ever become a *vested right* as against the right of the state to remove him. The *main consideration in the selection of officers and agents is the public welfare,* and the state, like any other principal, may select its agents, and acting through its legislature may determine for itself the methods of choosing its employees and the selection of those whose appointment will best subserve the public good; and one who desires to serve in an official capacity must submit to the orders and regulations under which he is admitted to the service." (Italics supplied.) 5 R.C.L. p. 610, Sec. 3; People ex rel. v. McCullough, 254 Ill. 9, 98 N.E. 156, Ann.Cas.1913B, 995; Newcomb v. Indianapolis, 141 Ind. 451, 40 N.E. 919, 28 L.R.A. 732; People ex rel. Akin v. Kipley, supra; Rogers v. Buffalo, 123 N.Y. 173, 25 N.E. 274, 9 L.R.A. 579; State ex rel. Buell v. Frear, 146 Wis. 291, 131 N.W. 832, 34 L.R. A.,N.S., 480; Goodrich v. Mitchell, 68 Kan. 765, 75 P. 1034, 64 L.R.A. 945, 104 Am.St. Rep. 429, 1 Ann.Cas. 288.

"In exercising its general authority and discretion the legislature has the constitutional right to create a board of civil service commissioners and to delegate to it the power to make rules, not inconsistent with existing laws, to conduct investigations and in the course thereof to compel the attendance of witnesses and the production of evidence, and · generally to exercise whatever administrative measures may be necessary to effect the purpose of the civil service act; and this is not considered as being a delegation of power to enact laws or of judicial functions, but merely a delegation of administrative powers and duties. In the exercise of the authority of civil service commissioners or other public officers thus conferred, they may prepare and promulgate rules for conducting civil service examinations, and these rules usually have the force and effect of law." 5 R.C.L. Sec. 5, p. 611; Ransom v. Boston, 192 Mass. 299, 78 N.E. 481, 7 Ann.Cas. 733; Hale v. Worstell, 185 N.Y. 247, 77 N.E. 1177, 113 Am.St.Rep. 895.

In the case of Conner v. Mayor, etc.,· 5 N.Y. 285, it was observed: "Public offices * * * are not incorporeal hereditaments; nor have they the character or qualities of grants. *They are agencies.* With few exceptions, they are voluntarily taken, and may at any time be resigned. They are created for the benefit of the public, and not granted for the benefit of the incumbent. Their terms are fixed with a view to public utility and convenience, and not for the purpose of granting the emoluments during that period to the officeholder." (Italics supplied.)

In the case of State ex rel. Buell v. Frear, Secretary of State, 146 Wis. 291, 131 N.W. 832, 834, 34 L.R.A.,N.S., 480, it is said, with reference to the civil service law of that state: "It rests with the Legislature to impose such conditions [referring to offices other than constitutional] as the nature of the various kinds of services demands and as may be required to remove existing or threatened evils incident thereto. So far as the act prescribes that appointments to and promotions in the civil service of the state 'shall be made only according to merit and fitness,' to be ascertained by examinations when practicable; creates a commission consisting of three members to be appointed by the Governor, by and with the advice of the Senate, for the purpose of carrying the law into effect; grants authority to them to make rules for carrying into effect the powers conferred on them; and excepts certain offices from the operation of the statute—it is an appropriate exercise of legislative power to secure improvement in the civil service; to regulate the civil service for the purpose of eradicating existing evils; to secure servants of skill and fitness; to deal more justly with servants entitled to reward for meritorious and efficient service; and to effectuate the purpose of promoting better government."

■ A public office is but a public agency; and the officer is but an agent of the public. The chief consideration in the selection of these agents should always be the public welfare, and the state can, when there are no constitutional limitations acting as barriers, undoubtedly fix and prescribe such qualifications for appointment as will best insure the selection of competent and capable servants.

In this connection, what was said by Mr. Justice Peckham, while serving on the Court of Appeals of New York, is so sound and so convincing that we here reproduce a part of his opinion, Rogers v. City of Buffalo, 123 N.Y. 173, 25 N.E. 274, 278, 9 L.R.A. 579: "Looking at it [the civil service law of New York] as a matter of common sense, we are quite sure that the framers of our organic law never intended to oppose a constitutional barrier to the right of the people through their legislature to enact laws which should have for their sole object the possession of fit and proper qualifications for the performance of the duties of a public office on the part of him who desired to be appointed to such office. So long as the means adopted to accomplish such end are appropriate therefor, they must be within legislative power. The idea cannot be entertained for one moment that any intelligent people would ever consent to so bind themselves with constitutional restrictions on the power of their own representatives as to prevent the adoption of any means by which to secure, if possible, honest and intelligent service in public office."

■ A careful reading of the Constitution of Alabama will disclose nothing to indicate that the legislature, in dealing with offices and employments of its creation, did not possess a free hand in imposing qualifications upon those who would aspire to appointment to such offices and employments. The right to create necessarily carried with it the right to prescribe lawful qualifications, to the end that the state should be served only by capable and efficient public servants.

■ The foregoing will fully serve to demonstrate that it was within legislative competence to enact a Merit Service Law, and this brings us, therefore, to the consideration of whether constitutional limitations were ignored, or overlooked in the framing and passage of the Act now under consideration.

It is first insisted that the Act, as passed, violates Section 45 of the Constitution, in that the provisions "for classification, examination and pay plan, etc., set forth therein purport to apply to officers of the state as well as employees of the state; whereas the title of said Act is not broad and comprehensive enough to embrace officers."

And next it is insisted that the Act is violative of Section 45 of the Constitution for the reason "that it embraces in the title two separate and distinct subjects, and deals with both in the body thereof." The super added matter, which it is insisted by the appellant makes the Act embrace two distinct subjects is the following: "No employee in the classified service shall be * * * a candidate for nomination or election to any public office."

The title to the Act is: "To create and establish a Merit System to administer, control and regulate employment in the Service of the State of Alabama; to regulate and control employees of the State of Alabama; in the classified and unclassified service and the Method of employing certain personnel by the State of Alabama, its depart—

-ments and agencies; to create and establish the State Personnel Department and to require an appropriation therefor; to create the State Personnel Board, Director of Personnel or other agencies to supervise and administer the System; to define the duties, powers and authority of said Board, said Director or other agencies; to provide for rules for administering this Act; to define the Exempt Service, the Classified Service and the Unclassified Service; to require the certification of payrolls; to require the classifying of the positions in the State service and to provide a pay plan; to prescribe methods of recruitment for filling positions in the Classified Service; to provide for reductions in personnel and for the transfer, promotion, demotion, lay-off, dismissal or suspension of employees in the Classified Service; to provide for investigations, training programs and other procedures for improving the efficiency of the governmental departments and agencies; to prohibit corrupt practices; to prohibit political activity by employees in the Classified Service; to provide for the attendance of witnesses at hearings or investigations held by said Board or its agencies; to provide for the payment of the expenses of said Department; to provide penalties for the violation of this Act and of the rules adopted pursuant thereto; and to repeal all laws and parts of laws inconsistent with the provisions hereof."

■ We see no merit whatever in the insistence of appellant that the title of the Act is not "broad and comprehensive enough to embrace officers of the state, as well as employees." The first part of the title immediately preceding the first semicolon, reads: "To create and establish a Merit System to administer, control and regulate employment in the State of Alabama;".

The term "Merit System" has a well-defined and well-understood meaning. It is defined in Webster's New International Dictionary as: "The system of appointing employees to *office* in the civil service, and of promoting them for competency only; opposed, in U. S., to Spoils System."

■ The title of an Act should receive a liberal construction, and the Act upheld if there is a substantial compliance with the constitutional requirement, albeit the title may not express the subject or object as "unequivocally as possible." This has been our uniform holding for years, and is based upon sound reasoning, supported by ample

authority. First National Bank of Eutaw v. Smith, 217 Ala. 482, 117 So. 38; 25 R.C. L. 850, § 95; State ex rel. Devening v. Bartholomew, 176 Ind. 182, 95 N.E. 417, Ann. Cas.1914B, 91.

■ The object, of course, of the constitutional provision requiring the subject of the act to be "clearly expressed" in its title was to prevent, as far as possible, deception by the inclusion in a bill of matter incongruous with the title. The question "must always be, whether, taking from the title the subject, we can find anything in the [Act] which can not be referred to that subject. If we do, the law embraces a subject not described in the title. But this conclusion should never be attained, except by argument characterized by liberality of construction and freedom from all nice verbal criticism." Ex parte Pollard, 40 Ala. 77, 99; Ballentyne v. Wickersham, 75 Ala. 533; Lindsay v. United States Savings, etc., Ass'n, 120 Ala. 156, 172, 24 So. 171, 42 L.R.A. 783.

It will be observed that the title in the two first lines of the Act, reads: "To create and establish a Merit System to administer, control and regulate *employment in the service of the State of Alabama;*".

The term "employment" should not be given a narrow and technical meaning, but rather such meaning within permissible bounds of its definition, as will support the constitutionality of the Act, rather than a meaning that will defeat it in the accomplishment of its real and apparent object.

We have held that if the words used in a title, taken in any sense or meaning they will reasonably bear, are sufficient to cover the provisions of the Act, the Act will be sustained, even though such meaning may not be the most common meaning of the words. First National Bank of Eutaw v. Smith, supra.

If it be a fact that the body of the bill does apply to offices, created by the legislature, and not by the Constitution, the title of the Act is sufficiently broad to cover the matters included in the body.

In the case of United States v. Hartwell, 6 Wall. 385, 393, 73 U.S. 385, 393, 18 L.Ed. 830, it was said: "An office is a public station, *or employment,* conferred by the appointment of government." (Italics supplied.)

In Henly v. Lynne, 5 Bing. 91, Lord Chief Justice Best, in defining who is a public officer, said: "Everyone who is ap-

pointed to discharge a public duty, and receives compensation, in whatever shape, from the crown or otherwise, is a public officer." And Chief Justice Marshall, in United States v. Maurice, Fed.Cas. No. 15,-747, 2 Brock 96, 102, said: "If a duty be a continuing one, which is defined by rules prescribed by the government, and not by contract * * * it seems very difficult to distinguish such a charge *or employment* from an office, or the person who performs the duties from an officer." [Italics supplied.]

In Michael v. State, ex rel. Welch et al., 163 Ala. 425, 50 So. 929, it was expressly held that an office is a public charge or employment, and that the term comprehends every charge or employment in which the public is interested.

So, then, we conclude that the title of the Act in the respect now considered is sufficiently broad and comprehensive to cover the several classifications of employment included in the body of the Act.

It is next insisted that the Legislature has undertaken to deal with two separate and distinct subjects in both the title and the body of the Act, and that under the authority of Builders' & Painters' Supply Co. v. Lucas & Co., 119 Ala. 202, 24 So. 416, the court will not undertake to choose between the two subjects, and will therefore strike down the entire act.

It is the insistence of appellant that by the inclusion in the bill of the provision "No employee in the classified service shall be * * * a candidate for nomination or election to any public office," the Act, both in its title and body, undertakes to legislate upon two distinct and separate subjects, and therefore, violates Section 45 of the Constitution.

The one controlling, dominating thought and purpose of the Act was to secure fit, capable and efficient service from those in the state's employment, and if, to the legislative mind, candidacy for office would militate against the service, or render the employee or official less active and efficient, or less independent, in the discharge of his duties to the state, there could be no objection to the inclusion of such prohibition against candidacy for office. The inclusion of this prohibition was germane and complementary to the dominant purpose of the Act. Through the whole Act there is complete unity and singleness of thought and purpose—efficiency in the administration of the affairs of the state government.

A statute has but one subject, no matter how many different matters it relates to, or deals with, if they are all cognate, and are but different branches of the same subject. Yeilding et al. v. State ex rel. Wilkinson, 232 Ala. 292, 167 So. 580. There is no merit in the contention of appellant that the Act, both in its title and body, deals with, and undertakes to legislate upon, two distinct subjects.

It is also insisted that the Act contravenes Sections 42, 43 and 44 of the Constitution, in that it contains provisions delegating purely legislative authority to the Governor and to the State Personnel Board as therein created.

The powers conferred upon the Governor, the Personnel Board, and the Director are purely administrative, and in no true or just sense legislative as the term "legislative" implies. In the case of State ex rel. Adams v. Burdge, 95 Wis. 390, 70 N.W. 347, 350, 37 L.R.A. 157, 60 Am.St. Rep. 123, is found a very concise statement of the rule to determine whether a power conferred upon a Board is strictly legislative or whether it is administrative. It is there observed: "The true test and distinction whether a power is strictly legislative, or whether it is administrative, and merely relates to the execution of the statute law, 'is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution to be exercised under and in pursuance of the law.' The first cannot be done. To the latter, no valid objection can be made."

The power to make rules and regulations is purely administrative, not legislative, and is conferred by the Act upon the Board and Director for the sole and exclusive purpose of carrying into practical effect and operation the law, and to secure an effective execution of the same. It in no wise contravenes any of the provisions of Sections 42, 43 and 44, nor of any one of said sections. Franklin v. State ex rel. Alabama State Milk Control Board, 232 Ala. 637, 169 So. 295; Railroad Commission v. Alabama Northern Ry. Co., 182 Ala. 357, 62 So. 749; Whaley v. State, 168 Ala. 152, 52 So. 941, 30 L.R.A.,N.S., 499; Ward v. State ex rel. Parker, 154

Ala. 227, 45 So. 655; Tallassee Falls Mfg. Co. v. Commissioner's Court, 158 Ala. 263, 48 So. 354; State ex rel. Bond v. State Board of Medical Examiners, 209 Ala. 9, 95 So. 295; Parke v. Bradley, State Treasurer, 204 Ala. 455, 86 So. 28.

 Of course, there is no approach to merit in the contention that the Act contravenes Sections 1, 70, 112, 134, 137, 139, 164 and 166 of the Constitution of the State. The total lack of merit in such contention may readily be seen by referring to these sections.

 Any contention that to impose civil service, or merit provisions upon incumbents of constitutional offices in the exercise of their power to appoint subordinates is an unconstitutional interference with their powers as constitutionally established officers has received the attention of the courts, and the contention held to be without merit. People ex rel. v. McCullough, 254 Ill. 9, 98 N.E. 156, Ann.Cas. 1913B, 995.

It is also insisted that the Act contravenes Section 21 of the Constitution. This section provides: "That no power of suspending laws shall be exercised except by the legislature."

It is insisted that the Act of the Legislature of 1933, Gen. Acts 1933, Ex. Sess., p. 124, had fixed the salaries and compensation of employees and officers in all the executive and judicial departments of the state, and that said Act was in full force and effect at the time of the enactment of the Merit System Act; "that the Merit System Act purported to authorize the Director, the Board and the Governor either or all, acting in concert, to fix pay plans for all officers and employees, to which it purported to apply in such manner and upon such terms as it or they saw fit; and that when so fixed, all officers and employees shall be paid upon the pay plan applicable to them;" that this had the effect of delegating to the governor and to the administrative agency the power to suspend the provisions of the Lapsley-Lusk Act and other acts subsequently enacted fixing at definite sums the compensation of officers and employees in some of the several departments. That, in this respect, the Merit System Act violates Section 21 of the Constitution.

It is to be noted that the Merit System Act carries with it the following repealing clause: "All laws or parts of laws inconsistent or in conflict with this Act are hereby expressly repealed, subject to the provisions of Section 40 hereof. Specifically and again without limiting the generality of the above, all laws or parts of laws the effect of which is to prescribe a different method of selection or appointment or to fix terms of office or employment and *rate of compensation* for services contrary to the express or implied effect and provisions hereof are repealed, it being the legislative intent that the terms of this Act shall be fully effective, any law or parts of laws heretofore enacted to the contrary notwithstanding."

 "A repealing clause will be given effect according to its express terms, even to the repeal of a special or local law." Tucker v. McLendon, 210 Ala. 562, 98 So. 797; Maxwell v. State, 89 Ala. 150, 7 So. 824; State ex rel. Bibb v. Town of Warrior, 181 Ala. 642, 62 So. 69; Fidelity & Deposit Co. of Maryland v. Farmers' Hardware Co. et al., 223 Ala. 477, 136 So. 824; Allgood v. Sloss-Sheffield Steel & Iron Co., 196 Ala. 500, 71 So. 724.

 We may here say, and point out for the proper guidance of those charged with the duties of carrying into effect the Merit System Act, that while the Act confers upon the Personnel Director, and the State Personnel Board, with the approval of the Governor, the authority to fix and establish a "pay plan" for all employees in the state service, to include for each class a minimum and maximum rate of pay, and such intermediate rates as the Director considers necessary or equitable, nevertheless in the establishment and enforcement of such "plan," Section 281 of the Constitution cannot be overlooked or disregarded. While the Legislature permits offices of its creation to continue, those holding the same, with fixed terms and at fixed salaries, are protected by said section of the Constitution from any diminution of salary, and likewise by the same section of the Constitution, their salaries cannot be increased, during the term for which they were elected or appointed. It must not be overlooked, however, that an office created by the legislature may be abolished at its pleasure, and the officer may be removed from office in the manner provided in the act creating the office, and such officer cannot invoke any protection from Section 281 of the Constitution. Hard, State Comptroller, v. State ex rel. Baker, 228 Ala. 517, 154 So. 77;

284

Butler et al. v. Pennsylvania, 10 How. 402, 13 L.Ed. 472.

■ The Act is capable in respect here under consideration of being given an effect that will not violate said Section 21.

The last question propounded for declaration thereon is whether, if the Act in question is constitutional, the comptroller is authorized to issue warrants, upon the vouchers and requisition of the State Personnel Director, for amounts to reimburse the said Director for transportation, hotel bills, meals and other expenses actually and necessarily incurred by him while traveling away from his official station in the performance of his official duties as said Director? And, if so, is there any maximum per diem limitation on the amount for which he may be reimbursed for maintenance and sustenance, not exceeding the expenses actually and necessarily incurred by him therefor?

An answer to these questions is not without some difficulty. Here the state has undertaken to set up an extensive plan for the reorganization of the government· along lines which appeared to the legislature would result in bringing about a more efficient, orderly and economical administration of the affairs of the state. The plan formulated and promulgated by the adoption of the Merit System Act is comprehensive, and heretofore wholly untried in this state. For properly establishing and putting into effect and operating the plan, the legislature has appropriated to defray the expenses of the State Personnel Department the sum of fifty thousand dollars. The new scheme necessarily calls for a wide range of information, supervision and investigation, and we think there is implicit authority in the Act for the Personnel Director to incur expenses in traveling from his official station, in making investigations, and for information, if in the sound judgment of the State Personnel Board such expenses were proper and necessarily incurred. To be sure, it is the law that one who would exact or demand payment to him of moneys out of public funds must point to some definite provision of the law authorizing the payment, yet there is express authorization in the Act for expending this public money, not in excess of $50,000.00, in defraying the expenses of the State Personnel Department,· and it is no part of any judicial function to presume to tell this agency of the state how, and for what such

appropriation shall be expended. The expenditure of the appropriation has been confided by the Legislature to the State Personnel Department, and the courts will not undertake to supervise this agency in its determinations of matters necessary to be done, or in its expenditures, so long as the Board acts within the bounds of the law under which it was appointed. Scott v. Mattingly, 236 Ala. 254, 182 So. 24; Harris v. Cope, 236 Ala. 415, 183 So. 407; 32 C.J. p. 242, § 384.

While it was within the power and right of the State Personnel Board, and of the Director, to determine that it was necessary that the Director should travel from his official station in the discharge of his official duties, and incur hotel bills, and transportation costs, nevertheless the law provides: "The maximum amount allowable to persons travelling in the service of the State of Alabama or any of its agencies or institutions for expenses other than actual expense of transportation shall be $3.00 per diem." Gen. Acts 1933, Ex.Sess., p. 81. *This is controlling upon the Director.*

The Act, as we construe it, makes no effort, and it was not the legislative mind, to restrict in any manner the functions, duties or compensation, either as to the amount or mode of payment, of constitutional officers, who are in that regard unaffected thereby. Nor was it the legislative intent, as we have heretofore observed, to alter or disturb the compensation of those officers created by statute with a fixed term and salary protected by Section 281 of the Constitution.

It has been suggested that some of the Act's provisions tend to disturb the independence and separateness of the departments, particularly the judiciary. True, under our system the government is· divided into executive, legislative and judicial, but no one department, so far as respects the Merit System established by this Act, can be said to rank over and above another. We find nothing in the Constitution which tends to a lack of equality· in this regard. All are agencies of the state engaged in the promotion of good government.

The Act, under Section 40, may be put into effect short of twelve months, which is a period allowed to the administrative officers in order to organize and prepare for the administration of the Act. Twelve months is a permissive period

only, and no restriction was intended against an earlier operation of the Act.

Before concluding this opinion we may further say that Section 10 of the Act is not quite as clear in some of its provisions as might be desired, but we are not called upon here to construe this Act in all of its particulars. Assuming, as we should, that those in charge of the execution of the Act, will properly interpret and construe its provisions, we see no reason to hold this section of the Act unconstitutional.

It follows, therefore, that the decree of the circuit court as modified herein is due to be affirmed.

Modified and affirmed.

All the Justices concur.