The plaintiffs-appellants, Rebecca Gideon and her husband, Ted Gideon, filed suit seeking declaratory relief as to the application of the State Ethics Act, Code 1975, § 36-25-1, et seq. Rebecca Gideon is employed as a Birmingham police officer. After a recent salary increase to an amount in excess of $15,000 annually, Ms. Gideon became subject to the financial reporting and disclosure provisions applicable under the Act to all public employees. The Act, defining "Public Employee," reads:
 Any employee of state, county or municipal governments who has administrative and discretionary authority for the receipt or expenditures of public funds or who earns in excess of $15,000.00 annually, but shall not include those persons who are primarily engaged in teaching duties in all schools, colleges, and universities in the state. Code 1975, § 36-25-1 (9).
Ted Gideon is a practicing attorney and, as the spouse of a public employee under the Act, his wife would be required to file a statement of his economic interests. Code 1975, §36-25-14.
The Gideons contend that the Act, as applied to them, violates their rights of due process and equal protection, and also invades their constitutional right of privacy. From a summary judgment against them, they appeal. We affirm.
The issues presented, which have not heretofore been decided, are:
1. Whether the Act is unconstitutional insofar as it applies to the class of governmental employees who earn in excess of $15,000 annually; and
2. Whether the Act is unconstitutional insofar as it compels financial disclosure on the part of the spouses and dependents of persons primarily subject to the Act.
 ISSUE NUMBER ONE
Issue number one is best resolved by approaching it from the three constitutional *Page 572 
challenges which appellants make to the $15,000 threshold of Code 1975, § 36-25-1 (9).
 Sub-Issue A. Does the Act, which requires financial disclosure by certainpublic employees (as defined in Code 1975, § 36-25-1 (9)),invade a "zone of privacy" of those employees which isprotected by the United States Constitution?
The United States Supreme Court has never held that the Constitution guarantees an absolute right of privacy; rather that Court has recognized certain "zones of privacy" protected by the penumbra emanating from the First, Fourth, Fifth, Ninth and Fourteenth Amendments.[1] The question with which we are presented is not whether the appellants' right of privacy has been invaded by the disclosure requirements; but whether the financial interests of a public employee are protected by a "zone of privacy." In each case in which the United States Supreme Court recognized a "zone of privacy," the interests invaded were not financial, but familial and personal, e.g., abortion, contraceptives, marriage.[2] As stated by Justice Rehnquist in Paul v. Davis, 424 U.S. 693, at 712, 713,96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1975):
 While there is no "right of privacy" found in any specific guarantee of the Constitution, the Court has recognized that "zones of privacy" may be created by more specific constitutional guarantees and thereby impose limits upon government power. See Roe v. Wade, 410 U.S. 113, 152-153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147, 176-178 (1973). Respondent's case, however, comes within none of these areas. He does not seek to suppress evidence seized in the course of an unreasonable search. See Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 581
(1967); Terry v. Ohio, 392 U.S. 1, 8-9, 88 S.Ct. 1868, 1872-1873, 20 L.Ed.2d 889, 898 (1968). And our other "right of privacy" cases, while defying categorical description, deal generally with substantive aspects of the Fourteenth Amendment. In Roe the Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which are "fundamental" or "implicit in the concept of ordered liberty" as described in Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288, 292 (1937). The activities detailed as being within this definition were ones very different from that for which respondent claims constitutional protection — matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the State's power to substantively regulate conduct.
The Illinois Supreme Court, when presented with the issue before this court, held:
 The notion that a person's ownership of property, real or personal, lies somehow within a protected zone of privacy, is new. For more than a hundred years the revenue acts of this State have provided, and they still provide, that schedules for the listing, under oath, of personal property for tax purposes shall be furnished to each person owning property subject to taxation.
. . . . .
 . . . We do not deal in this case with the most intimate relationships of husband and wife or with an effort by the State to control their decisions as to whether and when to have their children. We deal rather with a requirement that the financial affairs of persons who are paid by the public and who occupy positions of high public trust be disclosed.
. . . . . *Page 573 
 We conclude as did the Supreme Court of Washington in Fritz v. Gorton (1974), 83 Wn.2d 275, 517 P.2d 911, appeal dismissed for want of substantial Federal question (1974), 417 U.S. 902, 94 S.Ct. 2596, 41 L.Ed.2d 208, that financial disclosures required of State employees do not deprive them of their right of privacy guaranteed by the Constitution of the United States.
Illinois State Employees Association v. Walker, 57 Ill.2d 512,315 N.E.2d 9 (1974).
The Fifth Circuit Court of Appeals upheld the constitutionality of Florida's Sunshine Amendment which required financial disclosure by elected officials, Plante v.Gonzalez, 575 F.2d 1119 (5th Cir. 1978); and the constitutionality of the Federal Ethics in Government Act of 1978, Duplantier v. United States, 606 F.2d 654 (5th Cir. 1979); under challenges which argued that those acts violated the right of privacy of the individuals involved. We recognize that the United States Supreme Court has applied the strict scrutiny test to financial disclosures, thus seemingly according some protection to such disclosures. Buckley v.Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1975). A close examination of that case, however, reveals that the protection was accorded, not to financial disclosures in general, but only where they encroached on First Amendment rights.
Without deciding whether all financial affairs of all public employees are protected by a zone of privacy, we hold in light of the legitimate state interests fostered by the Act that the disclosures required in the instant case do not violate the United States Constitution by impinging on the employees' financial privacy. For these reasons the statute passes constitutional muster as to Sub-Issue A.
 Sub-Issue B. Does Code 1975, § 36-25-1 (9), applying only to those publicemployees who earn more than $15,000 annually, violate theEqual Protection Clause or Due Process Clause of the UnitedStates Constitution or Alabama Constitution?
The dissent states that "privacy challenges are more correctly analyzed as requests for due process rather than equal protection," citing Justice Stewart's concurrence inZablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618
(1978). Zablocki is inapposite to the instant case becauseZablocki involved a fundamental right (the right to marry) and the instant case involves no such right.
The United States Supreme Court has established two tests to determine whether a statute draws a classification which violates the Equal Protection Clause of the Fourteenth Amendment or whether that statute denies a person substantive due process of law. The Court applies the "strict scrutiny test" where the classification is based on "suspect criteria" or affects some fundamental right. The traditional indicia of a suspect class are: (1) A class determined by characteristics which are solely an accident of birth, Frontiero v. Richardson,411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1972); and (2) A class "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process," San Antonio School District v. Rodriguez, 411 U.S. 1,28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1972). The classifications which the United States Supreme Court has held are suspect have been drawn along racial lines, McLaughlin v.Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), or were based on an individual's alienage, Graham v. Richardson,403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). The Court has recognized as fundamental, the right to vote and to associate freely, Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5,21 L.Ed.2d 24 (1968); the right to travel interstate, Shapirov. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600
(1969); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995,31 L.Ed.2d 274 (1972); and those familial rights referred to supra
which fall within a recognized "zone of privacy." Since the instant case involves *Page 574 
neither a "suspect class" nor a "fundamental right," the rational basis test is the proper test to apply to either a substantive due process challenge or an equal protection challenge. Under the rational basis test the Court asks: (a) Whether the classification furthers a proper governmental purpose, and (b) whether the classification is rationally related to that purpose. In Buckley v. Valeo, supra, the Supreme Court recognized two proper governmental purposes for disclosure statutes: (1) They deter actual corruption and avoid the appearance of corruption, and (2) disclosure requirements are an essential means of gathering the data necessary to detect violations of the law. Buckley v. Valeo, 424 U.S. 1 at 67, 68, 96 S.Ct. 612 at 657, 658, 46 L.Ed.2d 659 (1975). Clearly, the disclosure of a public employee's economic interests is rationally related to the two purposes above.
On November 19, 1979, the Fifth Circuit Court of Appeals used the same analysis in upholding the Federal Ethics in Government Act of 1978 under equal protection and due process challenges.Duplantier v. United States, 606 F.2d 654 (5th Cir. 1979). That case is instructive in aiding us to decide the instant case because the challenged act in Duplantier, supra, was very much like the act in question in the instant case. The Fifth Circuit took note that the act before it drew no suspect classifications, impinged on no fundamental rights, and applied the rational basis test holding the disclosure requirement rationally related to the purposes of the act. The Court took note of those legislative purposes referred to in Buckley v.Valeo, supra, and suggested a possible third purpose for disclosure acts, i.e., promoting public confidence in government, and in the integrity of public employees.
The United States Supreme Court has recently applied a third test in cases involving disclosure statutes, i.e., balancing the government's interests against the interests of the individuals affected. Nixon v. Administrator of GeneralServices, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); and Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64
(1977). The Fifth Circuit has also applied this balancing test in Plante v. Gonzalez, 575 F.2d 1119 (5th Cir. 1978), where the constitutionality of Florida's Sunshine Amendment, which required financial disclosure of elected officials, was upheld.
An ingredient which must be factored into the balancing test is the fact that the individuals involved in the instant case are public employees. Justice Knight, speaking for this Court in Heck v. Hall, 238 Ala. 274, 190 So. 280 (1939), a case which involved a constitutional challenge to the Merit System Act, held that the legislature has authority to impose qualifications on those who aspire to public employment.
 A careful reading of the Constitution of Alabama will disclose nothing to indicate that the legislature, in dealing with offices and employments of its creation, did not possess a free hand in imposing qualifications upon those who would aspire to appointment to such offices and employments. The right to create necessarily carried with it the right to prescribe lawful qualifications, to the end that the state should be served only by capable and efficient public servants.
Heck v. Hall, 238 Ala. 274 at 280, 190 So. 280 at 284 (emphasis supplied). For the reasons assigned in that opinion, we would hold that the legislature has the authority to require as a condition of employment that those public employees who occupy a position of public trust must disclose their financial status. We recognize that the means chosen by the legislature to reach those public employees who occupy a position of public trust (the $15,000 annual salary threshold) will not include every public employee entrusted with a high level of responsibility, nor will it exclude every public employee entrusted with less responsibility. In other words the means chosen does not exactly meet the purpose of the Act. However, it is not necessary for the legislative means to exactly fit the legislative purpose. All that is required is that the means chosen by the legislature must be rationally related to its legitimate purpose. *Page 575 
We hold that the $15,000 threshold is a rational means for the legislature to use to reach those public employees entrusted with the most responsibility. Thus, under the balancing test, the scales tip in the legislature's direction, and the classification passes muster under the equal protection challenge.
 ISSUE NUMBER TWO Is the Act unconstitutional insofar as it compels financialdisclosure by an employee primarily subject to the Act of thefinancial interests of his or her spouse?
Again, because this portion of the statute draws no suspect classification and impinges on no fundamental rights, the constitutionality of the Act insofar as it applies to the spouses of those primarily subject to the Act must be determined by applying the rational basis test. Applying that test, we hold that the Act's application to spouses and dependents is rationally related to the proper legislative purposes of preventing and detecting corruption among public employees and fostering the public's confidence in its government. Not only is the means of accomplishing the legislative purpose (i.e., disclosure by an employee of his or her spouse's financial interests) reasonable, but it is necessary to make the Act effective. Absent a safe-guard provision the purposes of the Act could be thwarted by a public officer or employee concealing his economic interests by placing them in his spouse's name.
For the foregoing reasons, we hold that Code 1975, § 36-25-1, et seq., passes constitutional muster under the instant challenges.
AFFIRMED.
BLOODWORTH, MADDOX, ALMON and SHORES, JJ., concur.
BEATTY, J., with whom EMBRY, J., joins, concurs specially.
JONES, J., with whom FAULKNER, J., joins, dissents.
[1] Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678,14 L.Ed.2d 510 (1965); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684,6 L.Ed.2d 1081 (1961); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705,35 L.Ed.2d 147 (1973); Eisenstadt v. Baird, 405 U.S. 438,92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).
[2] Ibid.