CANADY, J.,
dissenting.
I disagree with the majority’s decision regarding the first two questions certified by the United States Court of Appeals for the Eleventh Circuit. I would answer both of those questions in the affirmative, I agree, however, with the majority’s decision to decline to answer the third certified question, which is a question of federal law rather than- Florida law.
The powers and duties of a state agency “include both those expressly given and those given by clear and necessary implication from the provisions of the statute” under which the agency operates. City Gas Co. v. Peoples Gas Sys., Inc., 182 So.2d 429, 436 (Fla.1965). It is an elementary principle of Florida law that “[w]hen authority is given by statute to accomplish a stated governmental purpose, there is also given by implication authority to do everything necessary to accomplish the purpose that is not a violation of law or public policy.” Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789, 792 (1919). These principles regarding the interpretation of the statutory powers and duties of governmental entities are, of course, based on a more general principle regarding the interpretation of statutory rights (or powers)' and duties: “ ‘If a statute grants a right or imposes a *722 duty, it also confers, by implication, every particular power necessary for the exercise of the one or the performance of the other.’ ... That which is clearly implied is as much a part of the law and is as effectual as that which is expressed.” Girard Trust Co. v. Tampashores Dev. Co., 95 Fla. 1010, 117 So. 786, 788 (1928) (quoting Newcomb v. City of Indianapolis, 141 Ind. 451, 40 N.E. 919, 921-22 (1895)). A statutory duty obviously carries with it a duty to take the particular steps reasonably necessary for the performance of the duty.
In his order granting the Agency’s motion for summary judgment, Judge Stafford made the crucial determination that the statutory scheme “places an implicit burden on [the Agency], rather than the client, to petition the court for release from an order of involuntary admission when the conditions for release are indicated.” J.R. v. Hansen, No. 4:11cv417-WS, 2012 WL 1886438, at *14 (N.D.Fla. May 22, 2012). The correctness of this determination flows ineluctably from three indisputable points. The first two points are based on express provisions of the statute. The third point is based on the meaning of “least restrictive” in the context of the statute.
First, section 393.0651(7), Florida Statutes (2011), requires that the Agency provide for an annual revision of each client’s individual support plan. There is no suggestion that a revised individual support plan is not intended to determine the provision of services by the Agency. Second, under section 393.0651, a crucial focus of the individual support plan process is the identification of the least restrictive environment for the provision of services to a client. Section 393.0651 leaves no doubt about the importance of identifying the least restrictive environment for the provision of services:
Each plan must include the most appropriate, least restrictive, and most cost-beneficial environment for accomplishment of the objectives for client progress .... The ultimate goal of each plan, whenever possible, shall be to enable the client to live a dignified life in the least restrictive setting, be that in the home or in the community.
§ 393.0651 (Emphasis added). Third, services provided to an involuntarily admitted individual are provided in a more restrictive setting than are services provided to individuals who are not involuntarily admitted. Indeed, the most restrictive setting for the provision of services is under an involuntary admission.
To reject Judge Stafford’s conclusion, it must be assumed that the Legislature intended to require the Agency to have individual support plans developed and revised with a focus on ensuring that services are provided in the least restrictive appropriate setting but did not intend to (a) require the annual review process to take into account that the context of an involuntary admission is more restrictive than other contexts, or (b) require the Agency to take the steps necessary to implement an individual support plan by seeking termination of an individual’s involuntary admission when the statutory requirements for involuntary admission are no longer satisfied. This is nonsensical.
There is no cogent reason that the annual review process should be allowed — or required — to ignore the undeniable reality that an involuntary admission is more restrictive than other contexts in which services are provided. The annual review process for an involuntarily admitted individual can only determine the “least restrictive” appropriate setting for services if it considers whether the legal requirements for involuntary admission are still satisfied. Similarly, once it is determined that a less restrictive context than involuntary admission is the appropriate context for the provision of services, it necessarily *723 follows that the Agency has a duty to take the steps necessary to ensure that services are provided in the less restrictive context, including petitioning the court for termination of the involuntary admission.
The “stated governmental purpose,” Bailey, 82 So. at 792, of the statute is the provision of services in “the most appropriate, least restrictive” setting possible, section 393.0651, Fla. Stat. (2011). The duty placed on the Agency to carry out that purpose necessarily carries with it “by implication” both the authority and the duty “to do everything necessary to accomplish the purpose that is not a violation of law or public policy.” Bailey, 82 So. at 792. The Agency’s consideration in the annual individual support plan review process of the appropriateness of continued involuntary admission and the Agency’s action to obtain judicial termination when continued involuntary admission no longer constitutes the “most appropriate, least restrictive” environment for the provision of services are both essential to carrying out the unequivocal mandate of the statute. § 393.0651, Fla. Stat. (2011). There is no express provision of law or any public policy that stands in the way of such action by the Agency. Recognizing these aspects of the statutory scheme is simply acknowledging the plain import of the statute. Failing to recognize them results from a cramped, unreasonable reading of the statutory text.
The view that the legislative purpose set forth in section 393.0651 “does not take into account section 393.11(8)(b)3, which requires finding that an individual would be a danger to himself or others if he is allowed to remain at liberty[,]” majority op. at 718, improperly imports incoherence into chapter 393. There is absolutely no authority, however, to support the assumption that in enacting one statutory provision the Legislature is ignorant of other related statutory provisions. On the contrary, it is axiomatic that the Legislature is presumed to know the law. See Holmes Cnty. Sch. Bd. v. Duffell, 651 So.2d 1176, 1179 (Fla.1995). And it is axiomatic that absent a clear inconsistency courts “must ... construe related statutory provisions in harmony with one another.” Villery v. Fla. Parole & Prob. Comm’n, 396 So.2d 1107, 1111 (Fla.1980) (superseded by statute as recognized by Van Tassel v. Coffman, 486 So.2d 528, 529 (Fla.1986)). The various provisions of chapter 393 therefore must be read harmoniously in light of the whole chapter.
Finally, the duty of the Agency under section 393.0651 is in no way circumscribed by the statutory provisions related to judicial review of involuntary admissions when a client reaches the age of majority, see § 393.115, Fla. Stat. (2011), or the provisions authorizing an involuntarily admitted person to petition for release, see § 393.11(13), Fla. Stat. (2011). These specific provisions are in no way inconsistent with the broad duty imposed by section 393.0651. The implication that they limit the reach of the duty imposed by section 393.0651 is not reasonable. That implication effectively rewrites the clearly established statutory duty of the Agency under section 393.0651. The annual review process is a critical feature of the statutory scheme designed to ensure the ongoing protection of the rights of the Agency’s clients. It is neither necessary nor appropriate to truncate that process because the Legislature has adopted other specific statutory measures to help protect the rights of clients in particular circumstances.
I therefore dissent.
PARIENTE, J., concurs.